IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GILVER ORDOSGOITTI, individually and on behalf of all others similarly situated, | ) ) ) | CASE NO. 8:20-CV-421 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **CLASS ACTION COMPLAINT and JURY DEMAND** |
| WERNER ENTERPRISES, INC. AND WERNER LEASING LLC, | ) ) ) | |
| Defendant. | ) | |

## INTRODUCTION

1.    This  class action lawsuit is brought against trucking company Werner Enterprises, Inc. ("Werner") and its subsidiary/affiliate Werner Leasing LLC ( "Werner Leasing" and, collectively, "Defendants") and arises out of their "lease-driver" or "owner operator" business opportunity program (the "Driving Opportunity") whereby certain of its truck drivers ("Drivers") leased trucks from Werner Leasing (and/or its predecessor Werner Leasing, Inc.) and in turn used such trucks to provide driving services to Werner.  In offering the Driving Opportunity to Drivers, Defendants made misrepresentations and/or failed to disclose material information about the economic opportunity, income, and miles the Driving Opportunity would provide and further misrepresented that Drivers would be independent contractors rather than employees.

2.    In connection with the offer and sale of the Driving Opportunity, Defendants have (1) violated the Nebraska Seller-Assisted Marketing Plan Act (the "SAMP Act"), NRS §§ 59-1701, *et seq.*; (2) violated the Nebraska Uniform Deceptive Trade Practices Act ("NUDTPA"), NRS §§ 87-301, *et seq.*; (3) violated the Nebraska Consumer Protection Act ("NCPA"), NRS §§ 59-1601, *et seq.*; and (4) committed common law misrepresentation.

1

3.    Plaintiff Gliver Ordosgoitti (hereinafter "Plaintiff") and the members of the putative Class are current and former Drivers who entered into both a "Vehicle Lease and Service Agreement" or similarly styled agreement with Werner Leasing (and/or its predecessor Werner Leasing, Inc) and a "Contractor Operating Agreement" or similarly styled agreement with Werner. Drivers are responsible for safely operating a commercial vehicle and transporting Werner's customers' cargo to their destination in a timely manner.

4.    Despite misrepresenting to Drivers that they are "independent contractors," Werner treats Drivers as employees in every material respect and effectively bars Drivers from engaging in business with anyone other than Werner, thereby making them financially dependent on Werner. Specifically, Werner exercises significant control over, among other things, the way that Drivers perform their job duties, the tools and equipment Drivers are required to use to perform their job duties, Drivers' rate of pay, and Drivers' ability to work for any other businesses. Finally, Drivers perform duties consistent with Defendant's usual course of business.

5.    Plaintiff and the Drivers seek relief for Defendants' misrepresentations and omissions of material fact regarding the income Drivers earn, the miles they drive, and the nature of the economic opportunity Defendants offer to them.

6.    Plaintiff and the Drivers also seek relief for Defendants' failure to provide necessary disclosures mandated by Nebraska law in connection with Defendants' sales of seller-assisted marketing plans. Such claims arise and are brought under the SAMP Act.

7.    Plaintiff also seeks declaratory, equitable, and injunctive relief, including restitution and disgorgement of profits.

8.    Finally, Plaintiff seeks reasonable attorneys' fees and costs under the SAMP Act, the NUDTPA and the NCPA.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), because the aggregated claims of the putative class members exceed the sum value of $5,000,000, exclusive of interests and costs, and this is a class action in which at least one member of the putative Class, on the one hand, and Defendant, on the other, are citizens of different states.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants have their  headquarters and offices, conduct business and can be found in the District, and the causes of action set forth herein have arisen and occurred in part in the District. Venue is further proper under 29 U.S.C. § 1132(e)(2) because Defendants have substantial business contacts within the state of Nebraska and in this District.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Finally, venue is appropriate in this district because the applicable agreements between Plaintiff and Drivers on the one the one-hand and Defendants on the other, provide for disputes to be litigated in Nebraska.

## PARTIES

12.     Plaintiff is a resident of the State of Florida.  Plaintiff performed work as a Driver for Werner as a designated owner-operator from approximately August 2018 to present. At all relevant times, Werner misrepresented to Plaintiff that he is, and will be treated as, an independent contractor when he is, in fact, a non-exempt employee. Plaintiff regularly engages in Defendants' business in various locations, including within this judicial district.

13.     Plaintiff is informed, believes, and thereon alleges that Werner is a Delaware corporation with its principal place of business in Omaha, Nebraska. Plaintiff is informed, believes, and thereon alleges that Werner Leasing is a Nebraska limited liability company with its principal place of business in Omaha, Nebraska. During the relevant time period, Defendants were, and are, regularly engaged in business throughout the United States, including in Nebraska. Werner's primary business consists of providing transportation services to various wholesale and retail clients. Werner Leasing's primary business consists of acquiring trucks and other equipment and leasing them to Drivers.

14.     At all relevant to times, Defendants have been "sellers" within the meaning of NRS § 59-1705 and engaged in the business of selling "seller-assisted marketing plans" as defined in NRS § 59-1703.

15.     At all relevant times, Defendants have been a "person" within the meaning of NRS § 87-301.

**FACTUAL ALLEGATIONS**

16.     Plaintiff incorporates by reference the allegations set forth above.

17.     During the time period relevant to this action, Werner has employed, and continues to employ, Drivers to provide long haul delivery services to Werner's customers.

18.     The Drivers' basic duties stay consistent and the Drivers do not provide additional services to Werner or its customers.

19.     Drivers work regular schedules for Werner, often 6-7 days per week, and 11-14 hours per day, in order to meet Werner's service and stand-by demands. As a result, it is impracticable for Drivers to simultaneously take on any other employment outside of Werner.

20.     While Werner represents to the Drivers that they are "independent contractors," it

4

treats them as employees in every material respect.  For example:

    a.   <u>No Freedom from Control or Direction</u>: Werner controls the performance of Drivers' work, both under the contract of service with Werner and in fact. Indeed, Werner determines the appearance of the truck (including by requiring that all trucks bear the Werner's logo); requires Drivers to operate under Werner's own Department of Transportation operating authority; prohibits its Drivers from working for other companies while also working for Werner; requires that Drivers be "qualified" to work for Werner; requires Drivers to submit to a background check; controls the limited pool of route assignments available for Drivers; determines the freight being transported and the customers to whom it is being delivered; fixes Drivers' rate of pay; retains the exclusive right to negotiate prices with the customers; and monitors Drivers' work through their dispatchers and Driver managers, the GPS systems installed in the trucks, and through Drivers' required reporting using the truck's electronic communication system, among other forms of control.

    b.   <u>Work Performed Within Werner's Facilities and in the Usual Course of their Business</u>:  Drivers perform work that is firmly within the usual course of Werner's trucking business, and inside Werner's business locations. Werner is in the business of delivering cargo loads to its customers, and the drivers are Werner's essential labor force for carrying out this core function. Moreover, the Drivers rely on Werner's network of facilities to retrieve and drop off freight, including Werner's numerous distribution centers and warehouses.

    c.   <u>No Independently Established Trade, Occupation, Profession or Business</u>:

Werner prohibits Drivers from maintaining or advertising an identity separate from Werner for services of the same type they were contracted to perform for Werner. Nor are the Drivers in independently established trades, occupations, professions or businesses. The Drivers work in a job that is synonymous with Werner's core function of transporting freight and offer no independent trade. Nor are they operating "independent businesses" that advertise services or solicit clients aside from Werner's customers.

d.  Werner requires the Drivers to sign a common "Contractor Operating Agreement" contract as a condition of employment, and to further their misclassification scheme.

e.  The "Contractor Operating Agreement" agreement sets forth a uniform compensation schedule that pays a rate based on miles driven.

21.    Despite Werner representing to its Drivers that they are "independent contractors" in the unlawful contract, the Drivers are treated as employees in every material respect. Drivers do not own their trucks or other equipment, but rather rely on Werner's leasing program to acquire the same.

22.    Werner also requires Drivers to use Werner's approved insurance, meeting coverage thresholds prescribed by Werner. Drivers must authorize Werner to sign and negotiate policies on Drivers' behalf.

23.    Accordingly, Werner misrepresents to Drivers, including Plaintiff, that they will be and are treated as independent contractors.

24.    Defendants' unlawful conduct has been widespread, repeated, and consistent throughout its operations in Nebraska and the United States.  Defendants knew or should have

known that their policies and practices have been unlawful and unfair.

25.    Defendants conduct is willful, carried out in bad faith, and caused significant damages to the Drivers in an amount to be determined at trial.

## CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23

26.    First, Plaintiff seeks to maintain his Nebraska state law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  In particular, Plaintiff seeks to certify the following Rule 23 Class:

> All current and former Drivers who entered into a "contractor operating agreement" or similarly styled agreement with Werner and a Vehicle Lease and Service Agreement" or similarly styled agreement with Werner Leasing (and/or its predecessor Werner Leasing, Inc) to provide transportation services for Werner within the United States at any time during the period beginning five years prior to the filing of this Complaint, and continuing through the resolution of this action.

27.    Plaintiff seeks to serve as a Class Representative for the above-defined Class.

28.    Plaintiff's Nebraska state law claims have been brought and may properly be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the putative Class is easily ascertainable.

29.    Numerosity:  The potential members of the Class are believed to exceed 700, and the Class Members are so numerous that joinder of all members is impracticable.

30.    Commonality:  There are questions of law and fact common to Plaintiff and the Class that predominate over any questions affecting only individual members of the Class. Examples of these common questions of law and fact include, without limitation:

> a.    Whether the Driving Opportunity constitutes a seller-assisted marketing plans under the Nebraska SAMP Act;

7

b. Whether Defendants provided the disclosure documents required by the Nebraska SAMP Act to Class members in connection with the sale of seller-assisted marketing plan;

c. Whether Defendants violated NUDTPA, the SAMP act, the NCPA and the common law by misrepresenting that Drivers would be independent contractors, misrepresenting the amount of income Drivers would earn, misrepresenting the average miles for Drivers; misrepresenting the amount of miles Drivers would drive and accrue, and concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the low average driving miles Werner provided to Drivers;

d. Whether Defendants engaged in fraud, negligent misrepresentation, and fraudulent concealment and otherwise breached a duty of disclosure by misrepresenting that Drivers would be independent contractors, misrepresenting income Drivers would earn, misrepresenting miles Drivers would get, misrepresenting the average length of haul, and concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the low average miles Werner provided to Drivers; and

e. The proper formula and methodology for calculating restitution, damages and penalties owed to Plaintiff and the Class as alleged herein.

31.    Typicality:  Plaintiff's claims are typical of the claims of the Class.  Defendants' common course of unlawful conduct as alleged herein has caused Plaintiff and Class members to sustain the same or similar injuries and damages.  Plaintiff's allegations – both legal and factual – are thereby representative of and co-extensive with the claims of the Class.

32.    Adequacy:  Plaintiff does not have any conflicts of interest with members of the Class he seeks to represent, and Plaintiff will prosecute this case vigorously on behalf of the putative Class members.  Plaintiff's Counsel are competent and experienced in litigating consumer and complex commercial class actions.  Plaintiff will fairly and adequately represent and protect the interests of the Class he seeks to represent.

33.    Superiority of Class Action:  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members.  Each Class member has been damaged and is entitled to recovery by reason of Defendants' illegal practices and violations of law stated in this complaint. Class treatment will allow those similarly situated persons to litigate their claims in the manner most efficient and economical for the Parties and the judicial system.

34.    Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

### FIRST CLAIM FOR RELIEF
**Unlawful Sales of Seller-Assisted Marketing Plans**
**Nebraska Seller-Assisted Marketing Plan Act ("SAMP" Act), NRS §§ 59-1701 et. seq.**

35.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

36.    The Nebraska SAMP Act regulates the sale of a "seller-assisted marketing plan" in the State of Nebraska.

37.    The Nebraska SAMP Act defines a "seller-assisted marketing plan" in pertinent part as follows:

[T]he sale or lease or offer for sale or lease of any product, equipment, supplies, services, license, or any combination thereof which will be used by or on behalf of the purchaser to begin or maintain a business when:

(1) The seller of the plan has advertised or in other manner solicited the purchase or lease of the plan; and
(2) The seller has represented directly or indirectly or orally or in writing that:

> (b) The seller or a person recommended or specified by the seller will provide the purchaser with or will assist the purchaser in finding outlets or accounts for the purchaser's products or services…
> (d) The purchaser will, is likely to, or can derive income from the business which exceeds the initial payment paid by the purchaser for participation in the plan;
> (e) There is a market for the product, equipment, supplies, or services which were initially sold or leased or offered for sale or lease to the purchaser by the seller…;
> …or
> (g) The seller or a person recommended or specified by the seller will provide advice or training pertaining to the sale of any products, equipment, supplies, or services or use of any licensed material and the advice or training includes, but is not limited to, preparing or providing (i) promotional literature, brochures, pamphlets, or advertising materials, (ii) training regarding the promotion, operation, or management of the seller-assisted marketing plan, or (iii) operational, managerial, technical, or financial guidelines or assistance.

38.     NRS § 59-1732 requires sellers of seller-assisted marketing plans to provide prospective purchasers of seller-assisted marketing plans with disclosure documents, which contain disclosure information required by NRS §§ 59-1729 – 59-1740, which information is intended to inform prospective purchases on key material aspects of the opportunity.  Indeed, NRS § 59-1701 (2) provides:

> "It is the intent of the act to provide each prospective seller-assisted marketing plan purchaser with the information necessary to make an intelligent decision regarding seller-assisted marketing plans being offered, to safeguard the public against deceit and financial hardship, to insure, foster, and encourage competition and fair dealing in the sale of seller-assisted marketing plans by requiring adequate disclosure, to prohibit representations that tend to mislead, and to prohibit or restrict

10

unfair contract terms. The act shall be construed liberally in order to achieve such purposes.

39.    Despite offering and leasing trucks and other equipment to Drivers and offering and promising to provide training and other assistance for the stated purposes of beginning a business, Defendants did not and do not provide Drivers, including Plaintiff, with the various disclosure documents required by the Nebraska SAMP Act.

40.    The SAMP act, NRS § 59-1729, also expressly prohibits Sellers from making *any* claims whatsoever concerning income or earning potential unless specific underlying data is disclosed in a timely fashion:

> In selling, leasing, or offering to sell or lease a seller-assisted marketing plan in this state, sellers of such plans *shall not represent that the seller-assisted marketing plan provides income or earning potential of any kind unless the seller has data to substantiate the claims of income or earning potential* and discloses this data to the purchaser at the time the claim is made, if made in person, or if made through written or telephonic communication, at the first in-person communication thereafter and, when disclosed, the data is left with the purchaser. A mathematical computation of the number of sales, multiplied by the amount of profit per sale to reach a projected income figure is not sufficient data to substantiate an income or earning potential claim. The data left by the seller must at least disclose: **(1)** The length of time the seller has been selling the particular seller-assisted marketing plan being offered; **(2)** The number and percentage such number represents of the total number of purchasers who form the basis for the income or earning potential representation; and **(3)** The number of purchasers known to the seller to have made at least the same sales, income, or profits as those represented.

(Emphasis added).

41.    It is thus unlawful for sellers of seller-assisted marketing plans to engage in the sale of such plans or to make income/profit potential claims to prospective purchasers without providing the mandated disclosures. The Driving Opportunity offered by Defendants meets the definitions of a seller-assisted marketing plan and they made earning potential and profit claims. For example, attached as **Exhibit A** is a marketing brochure Defendants distributed to Plaintiff

11

and each of the other Drivers in connection with the sale of the Driving Opportunity that contains the following assertions:

- "Attention Owner Operators  Drive Toward Your Future"

- "JOIN OUR TEAM… Are you interested in becoming an owner operator for Werner Enterprises? If so, we are interested in hearing from you. Thanks to our many pay packages and diverse operations, as an owner operator you have the flexibility that suits your lifestyle.

- "THE WERNER ADVANTAGE… Leasing program and truck purchase program"

- "WE PAY SIGN ON BONUSES FOR NEW SOLOS AND TEAMS ADDED TO OUR OWNER OPERATOR FLEET. ASK YOUR RECRUITER ABOUT ELIGIBILITY TODAY!"

- "THERE ARE MORE GREAT BENEFITS AVAILABLE TO DRIVERS. VIEW THE COMPLETE LIST INSIDE."

- "OWNER OPERATOR BENEFITS… **Opportunities** - Multiple dedicated and regional accounts available - Train company drivers, which means more miles/revenue… **Pay** - Compensated authorized lumpers - Paid motel, physical and drug screen (during orientation) - Direct deposit available - Weekly settlements - Fleet owner incentive pay"

- OWNER OPERATOR INFORMATION… **Lease Program**: Werner offers a leasing program that allows drivers the ability to lease a brand new never before driven truck. Werner's leasing program is a full-service lease which means Werner picks up the bill on all maintenance related costs. There is no requirement to have previous Werner

experience for this program. Approved credit is necessary for program eligibility.

- ADDITIONAL INFORMATION… Werner utilizes a team of Owner Operator specialized Fleet Managers who are here to help assist you with managing your business. These FMs are knowledgeable in all things relevant to the Owner Operator world and will be a great source of knowledge as you launch your career as a business owner.

42.    Defendants also published advertising to the general public touting the Driving Opportunity and its earning and profit potential.  Attached as **Exhibit B** is an example of such advertising from July 2018 and it touts:  "With Werner's new truck leasing program, owner operators can lease a brand new 2019 Freightliner Cascadia, Kenworth T-680 or Navistar International LT for 36 months….Werner's industry-leading pay and production means more miles and more money for owner operators!.... As an owner operator with Werner, I couldn't be happier. I have more miles than I can count, a great area to run in and competitive pay, said Dustin Simon…. While owner operator pay is dependent on the account, Werner owner operators average $1.13 per mile and can earn all the way up to $2.50 per mile…. Join Werner's team of over 600 owner operators and enjoy industry-leading pay and production!"

43.    Defendants provided further unsubstantiated earning and potential income documents to each and every Driver in the form of the pro formas found in **Exhibit C**.  All such earnings/income potential representations were made in derogation of NRS § 59-1729.

44.    Moreover, Defendants' misrepresented the nature of the opportunity and income and miles the Drivers could expect as well concealed the lack of miles and income the Drivers would reasonably and such conduct is in derogation of SAMP, NRS § 59-1757, which provides in pertinent part: "(1) No person shall, in connection with the offer, purchase, lease, or sale of any

13

seller-assisted marketing plan: (d) Directly or indirectly (i) employ any device, scheme, or artifice to defraud, (ii) make any untrue statement of a material fact or omit to state a material fact, or (iii) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

45.    Specifically, in addition to **Exhibits A** and **B**, as part of its standardized business conduct in selling the Driving Opportunity, Defendants provided to Plaintiff and each Driver a series of written pro forma representations before Drivers purchased the Driving Opportunity. These pro formas that Defendants provided to Plaintiff on or about July 23, 2018 are attached as **Exhibit C** and detail various positive income and mileage scenarios and further make express factual representations. For example, the pro forma describing the "solo driver" scenario makes the factual representation that the "Division Average" total miles per month for solo drivers was 9,750 per month consisting of 8,800 division average loaded miles and 950 division average dead head miles. Based on these factual averages, Defendants represented that the Drivers running solo could expect total monthly revenue of $12,950, total monthly expenses of $8,898.43, and net income of $3,662.26.

46.    The pro forma describing the "team driver or trainer" scenario makes the factual representation that the "Division Average" total miles per month for team drivers was 15,000 per month consisting of 13,750 division average loaded miles and 1,250 division average dead head miles. Based on these factual averages, Defendants represented that the Drivers running team could expect total monthly revenue of $18,181.82, total monthly expenses of $11,850.57, and net income of $6,331.25.

47.    The above representations in the pro formas and advertising were false and misleading, and Defendants knew it at the time and/or made the false representations recklessly.

Rather, Defendants concealed the true material facts that: 1) the true average mileage and income numbers were far below what Defendants had represented, 2) that the Driving Opportunity would not and did not offer Plaintiff and other Drivers a sustained viable economic opportunity, 3) that Drivers purchasing the Driving Opportunity could expect and often had very low and/or negative weekly paychecks and very low income, and 4) that Drivers purchasing the Driving Opportunity had and could expect a high failure and turnover rate.

48.    These undisclosed facts were known only to Defendants and not within the reasonable attention and observation of Plaintiff and other Drivers that purchased the Driving Opportunity.

49.    The Defendants concealed these facts in order to sell the Driving Opportunity to Plaintiff and other Drivers who in turn relied on such omissions when purchasing the Driving Opportunity.  Finally, Plaintiffs and other Drivers were damaged by Defendants' fraudulent concealment of material facts in that they purchased the Driving Opportunity and expended labor and suffered financially therefrom.

50.    For the foregoing reasons, Defendants are in violation of NRS §§ 59-1729 – 59-1757 as to Plaintiff and the putative Class.

51.    Pursuant to NRS § 59-1758, Plaintiff seeks recovery of all money and all other valuable consideration paid for the Driving Opportunity, actual damages, interest, and reasonable attorneys' fees and costs on behalf of himself and the putative Class.

### SECOND CLAIM FOR RELIEF
**Deceptive and Unfair Trade Practices**
**Nebraska Uniform Deceptive Trade Practices Act ("NUDTPA"), NRS §§ 87-301, et seq.**

52.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

53.    The NUDTPA, NRS §§ 87-301, et seq., bars deceptive and unfair trade practices in connection with "[advertising] of goods or services with intent not to sell them as advertised or [advertising] of the price in any manner calculated or tending to mislead or in any way deceive a person."

54.    In addition, NRS § 87-302 provides in pertinent part that " (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she: (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have… (16) Uses any scheme or device to defraud by means of: (i) Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises; or (ii) Selling, distributing, supplying, furnishing, or procuring any property for the purpose of furthering such scheme..."

55.    Drivers, including Plaintiff, purchased equipment and services from Defendants, including, but not limited to Defendants' leasing program to enable them to start in the Driving Opportunity providing services to Werner. When selling the Driving Opportunity, Defendants represented to the Drivers that they would assist Drivers, including Plaintiff, in finding purchasers for their services.  Werner also represented that it would provide Drivers, including Plaintiff, operational, managerial, technical, or financial guidance or assistance.

56.    In selling the Driving Opportunity, Werner represented to Drivers, including Plaintiff, that they would be independent contractors running their own business, not employees. This representation was material to Drivers, including Plaintiff.  As noted above, Werner's representations that Drivers would be independent contractors or independent business owners was false and/or misleading.  Werner in fact treated Drivers, including Plaintiff, as employees.

16

57.     Defendants also represented and advertised to Drivers and the general public in Nebraska and elsewhere, including Plaintiff, that if they purchased the Driving Opportunity, they would earn positive amounts of money and drive certain amounts of miles.  Examples of such representations and advertising are found in Werner's online job advertisements and in pro formas distributed to Plaintiff and other Drivers in training. Examples of such pro formas are attached as **Exhibit C**.  Examples of such advertising and promotional materials are attached as **Exhibits A** and **B**.

58.     Many of the representations made by Defendants were and are false and/or misleading and omitted material facts including the true Driver turnover, that the Driving Opportunity on the whole did not present a reasonable economic opportunity for Drivers, that Drivers purchasing the Driving Opportunity often failed and lost money, that average Drivers 1) earned nowhere close to the represented income, 2) often had weeks where they earned very little or even went negative in their pay, and 3) never drove close to the number of average miles represented or that were necessary to breakeven.

59.     Defendants made such false/misleading representations and concealed material facts in order to induce and mislead Drivers into purchasing and operating the Driving Opportunity.

60.     The Drivers, including Plaintiff, relied on Defendants' affirmative representations and its omissions of material facts, when deciding to purchase the Driving Opportunity from Defendants.  To this day, Defendants seek to and do continue to enforce the unlawfully procured Driving Opportunity contracts vis a vis Plaintiff and the putative class and continue to collect thousands of dollars per month from these Drivers.  As a current driver, Plaintiff continues to be harmed by Defendants' deceptive trade practices as do other current Drivers.

61.     The representations, omissions, and conduct of Defendants, as described above, constitute deceptive and unfair trade practices as well as unconscionable acts and practices that tended to and will tend to deceive and cause confusion to members of the Nebraska public and general public at large.

62.     Pursuant to NRS § 87-303, Plaintiff seeks recovery, disgorgement of ill-gotten gains,  and restitution of all money in equity and all other valuable consideration paid for the Driving Opportunity,  injunctive and other appropriate ancillary equitable relief, a declaration that the Plaintiff and the putative Class may retain their leased trucks other merchandise and have no further obligation to pay for the same pursuant to NRS § 87-303.07, and reasonable attorneys' fees and costs on behalf of himself and the putative Class.

### THIRD CLAIM FOR RELIEF
**Deceptive and Unfair Acts or Practices**
**Nebraska Consumer Practices Act ("NCPA"), NRS §§ 59-1601, et seq.**

63.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

64.     The NCPA, NRS §§ 59-1603 provides that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful."

65.     Drivers, including Plaintiff, purchased the Driving Opportunity from Defendants, which included various services and equipment.   When selling the Driving Opportunity, Defendants represented to the Drivers (including many members of the Nebraska general public) that they would assist Drivers, including Plaintiff, in finding purchasers for their services.  Werner also represented that it would provide Drivers, including Plaintiff, operational, managerial, technical, or financial guidance or assistance.

18

66.    In selling the Driving Opportunity, Werner represented to Drivers, including Plaintiff, that they would be independent contractors running their own business, not employees. This representation was material to Drivers, including Plaintiff.  As noted above, Werner's representations that Drivers would be independent contractors or independent business owners was false and/or misleading.  Werner in fact treated Drivers, including Plaintiff, as employees.

67.    Defendants also represented and advertised to Drivers and the general public in Nebraska and elsewhere, including Plaintiff, that if they purchased the Driving Opportunity, they would earn positive amounts of money and/or drive certain amounts of miles.  Examples of such representations and advertising are found in Werner's online job advertisements for owner-operators and in pro formas distributed to Plaintiff and other Drivers in training. Examples of such advertising are attached as **Exhibits A** and **B**. Examples of such pro formas are attached as **Exhibit C**.

68.    Many of the representations made by Defendants were and are false and/or misleading and omitted material facts including the true average solo and team miles, the true Driver turnover, that the Driving Opportunity on the whole did not present a reasonable economic opportunity for Drivers, that Drivers purchasing the Driving Opportunity often failed and lost money, that average Drivers earned nowhere close to the represented income, that  Drivers often had weeks where they earned very little or even went negative in their pay, and that Drivers never drove close to the number of average miles represented or that were necessary to breakeven.

69.    Defendants made such false/misleading representations and omissions in order to induce and mislead Drivers into purchasing and operating the Driving Opportunity.

70. The Drivers, including Plaintiff, relied on Defendants' affirmative representations and its omissions of material facts, when deciding to purchase the Driving Opportunity from Defendants.

71. The representations, omissions, and conduct of Defendants, as described above, constitute deceptive and unfair trade practices that tended to and will continue to deceive and cause confusion to members of the Nebraska general public and general public at large.

72. Pursuant to NRS § 59-1609, Plaintiff seeks recovery and restitution of all money in equity and all other valuable consideration paid for the Driving Opportunity, injunctive relief, damages, and reasonable attorneys' fees and costs on behalf of himself and the putative Class.

### FOURTH CLAIM FOR RELIEF
**Fraud, Negligent Misrepresentation and Fraudulent Concealment**

73. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

74. Under Nebraska Law, a party to a business transaction of the kind entered here must speak the truth and/or must not conceal omit material facts about the transaction.

75. In this case, as part of its standardized business conduct, Defendants provided to Plaintiff and each Driver a series of written pro forma representations before Drivers purchased the Driving Opportunity. These pro formas that Defendants provided to Plaintiff on or about July 23, 2018 are attached as **Exhibit C** and detail various positive income and mileage scenarios and further make express factual representations. For example, the pro forma describing the solo driver scenario makes the factual representation that the "Division Average" total miles per month for solo drivers was 9,750 per month consisting of 8,800 division average loaded miles and 950 division average dead head miles. Based on these factual averages, Defendants represented that

the Drivers running solo could expect total monthly revenue of $12,950, total monthly expenses of $8,898.43, and net income of $3,662.26.

76.     Further, the pro forma describing the team driver scenario makes the factual representation that the "Division Average" total miles per month for team drivers was 15,000 per month consisting of 13,750 division average loaded miles and 1,250 division average dead head miles.  Based on these factual averages, Defendants represented that the Drivers running team could expect total monthly revenue of $18,181.82, total monthly expenses of $11,850.57, and net income of $6,331.25.

77.     The above representations in the pro formas were false and misleading and Defendants knew it at the time and/or made the false representations recklessly.  Defendants distributed the pro formas made these misrepresentations with the intention that Plaintiff and others would rely on them and Plaintiff and other Drivers did in fact rely on them and have suffered injury as a result.

78.     And if the Defendants lacked the necessary fraudulent intent, then Defendants' conduct constituted negligent misrepresentation in that they failed to exercise reasonable care and competence when communicating the false and misleading information that was intended to induce Plaintiff and the other Drivers to purchase the Driving Opportunity.

79.     Defendants also fraudulently concealed material facts in the sale of the Driving Opportunity to Plaintiff and Drivers.  Specifically, Defendants had a duty to disclose material facts to Plaintiff and Drivers but failed to disclose the facts that they knew were necessary to make other statements made not misleading including that: 1) the true average mileage and income numbers were nothing close to what Defendants had represented, 2) that the Driving Opportunity would not and did not offer Plaintiff and other Drivers a sustained viable economic opportunity, 3) that

Drivers purchasing the Driving Opportunity often had very low and/or negative weekly paychecks and very low income, and 4) that Drivers purchasing the Driving Opportunity had a high failure and turnover rate. These undisclosed facts were known only to Defendants and not within the reasonable attention and observation of Plaintiff and other Drivers that purchased the Driving Opportunity. The Defendants concealed these facts in order to sell the Driving Opportunity to Plaintiff and other Drivers who in turn relied on such omissions when purchasing the Driving Opportunity. Finally, Plaintiffs and other Drivers were damaged by Defendants' fraudulent concealment of material facts in that they purchased the Driving Opportunity and expended labor and suffered financially therefrom.

## JURY DEMAND

Plaintiff hereby demands a jury trial pursuant to Fed. R. Civ. P. 38(b).

## REQUEST FOR PLACE OF TRIAL

Pursuant to NECivR 40.1(b), Plaintiff respectfully requests that the trial of this matter take place in Omaha, Nebraska.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a) Damages and restitution according to proof at trial for all injuries, as provided by the Nebraska Law;

b) For a declaratory judgment that Werner has violated Nebraska law and public policy as alleged herein;

c) For preliminary, permanent, and mandatory injunctive relief prohibiting Werner, its officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

22

d) For an order awarding Plaintiff and the Class members compensatory damages, including restitution, recovery of all money and other valuable consideration paid for the Driving opportunity, actual damages, and all other sums of money owed to Plaintiff and Class members, together with interest on these amounts, according to proof;

e) For an order awarding Plaintiff and the Class members civil penalties pursuant to Nebraska law, with interest thereon;

f) For an award of reasonable attorneys' fees as provided by Nebraska law;

g) For all costs of suit;

h) For interest on any damages and/or penalties awarded, as provided by applicable law; and

i) For such other and further relief as this Court deems just and proper.

DATED this 14th day of October, 2020.

GILVER ORDOSGOITTI, individually and on behalf of all others similarly situated, Plaintiff,

By:     /s/ Christopher P. Welsh
Christopher P. Welsh - #22279
WELSH & WELSH, P.C., L.L.O.
9290 West Dodge Road
204 The Mark
Omaha, NE  68114
Phone: 402-384-8160
cwelsh@welsh-law.com

and

Carolyn Hunt Cottrell (*pro hac vice* to be submitted)
David C. Leimbach (*pro hac vice* to be submitted)
Bryant C. Daniels (*pro hac vice* to be submitted)
SCHNEIDER WALLACE COTTRELL
   KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

and

Robert S. Boulter (*pro hac vice* to be submitted)
LAW OFFICES OF ROBERT S. BOULTER
1101 5th Ave #310
San Rafael, CA 94901
Tel: (415) 233-7100
Attorneys for Plaintiff and the Putative Class