IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GLIVER ORDOSGOITTI, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>WERNER ENTERPRISES, INC., and WERNER LEASING, LLC,<br><br>Defendants. | 8:20-CV-421<br><br>MEMORANDUM AND ORDER |

## I.     INTRODUCTION

This is a putative class-action lawsuit by Gliver Ordosgoitti against Werner Enterprises, Inc., and Werner Leasing, LLC, on behalf of a class of truck drivers who entered into certain contracts with Werner in the five years preceding the filing of the Complaint. Filing 1 at 7. It comes before the Court on the Werner entities' Motion to Dismiss all of the claims in Ordosgoitti's Complaint. Filing 22. For the reasons stated herein, the motion is granted in part and denied in part and Ordosgoitti will be granted leave to amend.

## II.     BACKGROUND

Plaintiff, Gliver Ordosgoitti, is a resident of Florida who has worked as a truck driver for Werner Enterprises, Inc., and Werner Leasing, LLC (collectively, "Werner"), from August 2018 to the time of filing the present suit. Filing 1 at 3. Werner hires truck drivers it classifies as "independent contractors" to perform long-haul delivery services. Filing 1 at 4. Despite Werner representing to drivers that they are independent contractors, Ordosgoitti claims it treats them as employees by exercising control over various aspects of their work. Filing 1 at 6-7. Ordosgoitti filed the present suit pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), alleging

1

various causes of action relating to Werner's conduct in hiring and contracting with drivers under false pretenses. Ordosgoitti has not yet moved for certification of the proposed class.

Ordosgoitti alleges that Werner induces drivers to enter into "Vehicle Lease and Service Agreement[s]" and "Contractor Operating Agreement[s]" by misrepresenting the potential profitability of such contracts. Filing 1 at 2. Under the Vehicle Lease and Service Agreement ("the leasing agreement"), drivers lease a truck owned by Werner for purposes of performing long-haul delivery work for Werner. Filing 1 at 6. The Contractor Operating Agreement ("the operating agreement") sets forth a uniform compensation schedule that pays a rate based on miles driven. Filing 1 at 6. According to Ordosgoitti, Werner misrepresents the amount of income drivers can earn, the average miles drivers can expect, the high turnover and failure rate of drivers, the low average income for drivers, and the low average driving miles Werner provides to drivers. Filing 1 at 8.

In support of his Complaint, Ordosgoitti attaches three documents which are informational advertising handouts Werner provided to him prior to entering into the above contracts for leasing a truck and driving for Werner.[1] Filing 1-1; Filing 1-2; Filing 1-3. The handouts tout the numerous benefits of entering into a driving contract with Werner and provide a testimonial from a Werner driver who "couldn't be happier" with his "competitive pay." Filing 1-2 at 2; *see generally* Filing 1-1. They also make predictions about a new driver's income potential, based in part on the average number of miles drivers received per month when working for Werner in the past. Filing 1-3 at 1, 2.

---

[1] "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)). Werner has not objected to consideration of the handouts and the Court finds them to be matters necessarily embraced by the pleadings and thus considers them in determining the present motion.

Ordosgoitti alleges Werner's misrepresentations and the inaccurate information in the attached handouts violate the Nebraska Seller-Assisted Marketing Plan Act, Neb. Rev. Stat. § 59-1701 et seq.; the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 et seq.; the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 et seq., and constitute fraud, negligent misrepresentation, and fraudulent concealment. *See generally* Filing 1 at 9-22.

### III.  ANALYSIS

Werner moves to dismiss all four counts of Ordosgoitti's Complaint, arguing they fail to state claims upon which relief can be granted.

### A.  Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 192 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678).

## B. Seller-Assisted Marketing Plan Act

Ordosgoitti's Complaint alleges the leasing and operating agreements violate the Nebraska Seller-Assisted Marketing Plan Act ("SAMP Act"), Neb. Rev. Stat. § 59-1701 et seq., because Werner failed to make certain disclosures required by the Act in connection with its marketing claims. Filing 1 at 11-15. Werner argues this claim should be dismissed pursuant to Rule 12(b)(6) because neither the leasing agreement nor the operating agreement constitutes a seller-assisted marketing plan for purposes of the statute. Filing 23 at 3-7. Alternatively, Werner argues the claim is preempted because federal regulations governing the leasing of motor vehicles conflict with the state statutory requirements when applied to the contracts at hand. Filing 23 at 7-10. The Court finds the Complaint states a claim upon which relief can be granted under the SAMP Act and that the federal regulations cited to by Werner do not preempt such a claim.

The SAMP Act was promulgated to protect Nebraska consumers from what the legislature viewed as harmful marketing plans, such as those "often connected with the sale of vending machines, vending racks, or work-at-home paraphernalia." Neb. Rev. Stat. § 59-1701(1). To this end, the Act requires certain disclosures "regarding [a] seller-assisted marketing plan, the amount of money [purchasers] can reasonably expect to earn, and the previous experience of the seller-assisted marketing plan seller." Neb. Rev. Stat. § 59-1701(1). As is relevant here, the Act defines a seller-assisted marketing plan as:

> the sale or lease or offer for sale or lease of any product, equipment, supplies, services, license, or any combination thereof which will be used by or on behalf of the purchaser to begin or maintain a business when:
>
> (1) The seller of the plan has advertised or in other manner solicited the purchase or lease of the plan; and
>
> (2) The seller has represented directly or indirectly or orally or in writing that:
>
> . . . .

4

> (b) The seller or a person recommended or specified by the seller will provide the purchaser with or will assist the purchaser in finding outlets or accounts for the purchaser's products or services;
>
> . . . .
>
> (d) The purchaser will, is likely to, or can derive income from the business which exceeds the initial payment paid by the purchaser for participation in the plan;
>
> . . . . or
>
> (g) The seller or a person recommended or specified by the seller will provide advice or training pertaining to the sale of any products, equipment, supplies, or services or use of any licensed material and the advice or training includes, but is not limited to, preparing or providing (i) promotional literature, brochures, pamphlets, or advertising materials, (ii) training regarding the promotion, operation, or management of the seller-assisted marketing plan, or (iii) operational, managerial, technical, or financial guidelines or assistance.

Neb. Rev. Stat. § 59-1703.

Ordosgoitti alleges Werner violated three specific provisions of the SAMP Act in conjunction with the leasing and operating agreements. First, Ordosgoitti alleges Werner violated the disclosure requirements of Neb. Rev. Stat. § 59-1732. That section requires the seller of an assisted marketing plan to disclose specific details in writing, including the seller's full contact information and legal history, financial information, and an unexecuted copy of the proposed entire seller-assisted marketing plan contract. Neb. Rev. Stat. §§ 59-1733–59-1740. Next, Ordosgoitti alleges Werner violated Neb. Rev. Stat. § 59-1728 prohibiting sellers of assisted marketing plans from making any claims concerning income potential unless certain underlying data is disclosed. Finally, Ordosgoitti claims Werner violated the SAMP Act by misrepresenting key facts in violation of Neb. Rev. Stat. § 59-1729 which provides any statements about earning potential must be substantiated by sufficient data.

In arguing for dismissal, Werner does not deny it failed to make the disclosures required in the subsections Ordosgoitti cites. *See* Filing 23 at 4-7. Rather, it argues that the SAMP Act (and therefore the cited disclosure requirements) does not apply to its contracts with Ordosgoitti at all. First, Werner, argues the SAMP Act applies only to sales and marketing activities, not personal services like truck-driving. Filing 23 at 3. It further claims the leasing agreement is not a seller-assisted marketing plan because it fails under the various alternative prongs of Neb. Rev. Stat. § 59-1703(2): it never alleged it would assist Ordosgoitti in finding third-party outlets or accounts for the truck, it never alleged Ordosgoitti would derive income that exceeded his initial leasing payment, it never alleged there was a market for the leased truck, and it never promised to provide advice or training. Filing 23 at 4-7. It argues the operating agreement does not constitute a seller-assisted marketing plan because there is no purchase or sale involved in the agreement as required under Neb. Rev. Stat. § 59-1703(1). Filing 23 at 6. It further argues that operating agreement is not a seller-assisted marketing plan under the second prong of § 1703 because it never promised to provide outlets or accounts to Ordosgoitti as a driver, it never promised his income would exceed his initial payment, it did not claim there was a market to sell his services, and it did not promise to provide training or services within the meaning of Neb. Rev. Stat. § 59-1703(2)(g).

The Court finds both the leasing agreement and the operating agreement fall within the meaning of seller-assisted marketing plans as defined in the SAMP Act. Werner attempts to read additional restrictions into the statutory language that would remove its contracts from the ambit of the Act. For example, it argues the SAMP Act is only meant to apply to sales and marketing activities, not personal services like truck driving. Filing 23 at 7. The statutory definition is not so limited; it applies to "the . . . lease . . . of any . . . equipment . . . which will be used by . . . the purchaser to begin or maintain a business." Neb. Rev. Stat. § 59-1703. The lease of the truck by

6

Werner to Ordosgoitti to begin his business as an independent-contractor truck driver falls within this definition. Werner likewise argues both contracts nevertheless fail under the second prong of the statute because it only ever promised to provide Ordosgoitti with driving opportunities through Werner itself, not to provide him with third-party accounts or outlets for his services as required under Neb. Rev. Stat. § 59-1703(2)(b). Filing 23 at 6. Werner's reading manufactures the requirement that any promised accounts or outlets must be from a third-party. The statute has no such requirement and thus Werner's promise to provide Ordosgoitti with its own driving opportunities meets the statutory definition of a seller-assisted marketing plan. Furthermore, Ordosgoitti has adequately alleged actions by Werner which would also fall under subsection d and g of the second prong for representing Ordosgoitti would make his money back and that Werner would provide training. *See* Neb. Rev. Stat. §§ 59-1703(2)(d) & (g). Therefore, both the leasing agreement and the operating agreement constitute seller-assisted marketing plans under Nebraska law.

Lastly, Werner does not contest that if the SAMP Act applies, the Complaint adequately alleges it failed to make the disclosures required under the statute. *See generally* Filing 23 at 3-7. The Court thus agrees the Complaint states a claim in this regard.

Werner argues that even if Ordosgoitti's allegations state a claim for relief under the Nebraska SAMP Act, the claim must nevertheless be dismissed because it is preempted by federal regulation. Filing 23 at 7-10. Werner points to the Truth-in-Leasing regulations set forth at 49 C.F.R. § 376.1 et seq. It argues that because the Nebraska SAMP Act requires disclosures beyond those required by the Truth-in-Leasing regulations, it is in conflict with and preempted by those regulations. Filing 23 at 7-10.

The Truth-in-Leasing regulations apply to the leasing of equipment by motor carriers that are registered with the Secretary of Transportation to transport property. 49 C.F.R. § 376.1. Werner argues the regulations apply to a situation like the one at hand in which Werner owns a truck and leases it to a driver like Ordosgoitti. Filing 23 at 10. However, the regulation setting forth the general lease requirements Werner claims preempt the SAMP Act applies only when the "carrier . . . performs authorized transportation in equipment it does not own." 49 C.F.R. § 376.11. Thus, it applies to situations in which a truck driver owns his or her own vehicle and leases it to a motor carrier for purposes of transport, not the reverse situation present here where the carrier owns the vehicle and leases it to the driver. This is also reflected by the use of the phrase "owner-operator" in the preemption cases Werner cites to refer to the party making a claim under the Truth-in-Leasing regulations. *See, e.g.*, *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1212 (10th Cir. 2016) (discussing the purpose of the Truth-in-Leasing regulations to require "full disclosure between the carrier and the owner-operator of the [vehicle]" and applying the regulations in the context of "independent truckers leasing their trucks and driving services to [the defendant company]" (quoting *In re Arctic Exp. Inc.*, 636 F.3d 781, 796 (6th Cir. 2011))). Because the regulations do not apply to the scenario at hand, they do not preempt the Nebraska SAMP Act and Werner's Motion to Dismiss the SAMP Act claim is denied.

### C. Nebraska Uniform Deceptive Trade Practices Act

Ordosgoitti's Complaint alleges Werner's actions in recruiting him to enter into the leasing and operating agreements violated the Nebraska Uniform Deceptive Trade Practices Act ("NUDTPA"), Neb. Rev. Stat. § 87-301 et seq. Werner argues Ordosgoitti fails to state a claim under the NUDTPA because he does not allege the truck he leased was defective, because any statements by Werner were mere sales talk or puffery, and because Ordosgoitti seeks monetary

8

damages which are not allowed under the statute. Filing 23 at 10-15. The Court finds Ordosgoitti fails to state a claim because the NUDTPA does not allow for the relief he seeks.

The NUDTPA prohibits certain trade practices determined by the Nebraska legislature to be deceptive or harmful. *See* Neb. Rev. Stat. § 87-303. Ordosgoitti's Complaint alleges Werner's actions fell into three of the enumerated categories of deceptive trade practices as follows:

> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she:
>
> . . . .
>
> (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;
>
> . . . .
>
> (11) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;
>
> . . . .
>
> (16) Uses any scheme or device to defraud by means of:
>
> (i) Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises; or
>
> (ii) Selling, distributing, supplying, furnishing, or procuring any property for the purpose of furthering such scheme . . . .

Neb. Rev. Stat. § 87-302.

The statute allows for prospective, injunctive relief only:

> A person likely to be damaged by a deceptive trade practice of another may bring an action for, and the court may grant, an injunction under the principles of equity against the person committing the deceptive trade practice. The court may order such additional equitable relief as it deems necessary to protect the public from further violations, including temporary and permanent injunctive relief.

Neb. Rev. Stat. § 87-303(a).

Werner argues Ordosgoitti's claim fails because it involves a contract, not a good or service, and because any statements by Werner were mere puffery, not affirmative misrepresentations of fact. Filing 23 at 10-13. The Court need not address these contentions, however, because the claim fails under the remedy prong of the statute. Ordosgoitti frames his request for relief under the NUDTPA as one for "recovery, disgorgement of ill-gotten gains, and restitution of all money in equity and all other valuable consideration [and] injunctive and other appropriate ancillary relief." Filing 1 at 18. He argues his request is proper because the statute allows for equitable relief. Filing 35 at 12. But the statute is more nuanced than broadly allowing for all equitable relief as Ordosgoitti seeks. Rather, the statute provides prospective relief only in order to protect a plaintiff and the public from future harm, not to remedy past harms or to serve as a substitute for monetary damages. In particular, the statute allows "[a] person *likely to be damaged* by a deceptive trade practice" to seek an injunction, rather than one who has already claimed damage from one. Neb. Rev. Stat. § 87-303(a) (emphasis added). Furthermore, equitable relief in addition to an injunction is appropriate only where it is "necessary to protect the public from further violations." Neb. Rev. Stat. § 87-303(a). Ordosgoitti seeks relief for past harms he claims to have suffered due to Werner's conduct in soliciting him to enter into the leasing and operating contracts. *See generally* Filing 1. Because he continues to work for Werner, he does not and cannot allege he is at a risk for future harm in Werner's recruiting practices and thus cannot seek injunctive relief under the statute. Any other request for equitable relief, such as disgorgement or restitution, is secondary to injunctive relief under the statute and thus not available where, as here, a plaintiff seeks it merely as a substitute for past damages. Accordingly, Werner's motion to dismiss Ordosgoitti's claim under the NUDPTA is granted.

### D.  Nebraska Consumer Protection Act

Ordosgoitti claims Werner violated the Nebraska Consumer Protection Act ("CPA"), Neb. Rev. Stat. § 59-1601 et seq. by misrepresenting and misleading potential drivers about the profitability of the leasing and operating agreements. Filing 1 at 18-20. Werner argues the CPA does not apply to the facts at hand either because it concerns only matters of public interest, not private wrongs like the contracts at issue, or because it expressly exempts conduct covered by federal law and the same Truth-in-Leasing regulations cited above govern the conduct here. Filing 23 at 16-19. The Court finds Ordosgoitti fails to state a claim because he does not allege a public interest in the supposedly misleading contracts.

The Nebraska CPA states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb. Rev. Stat. § 59-1602. It defines "[t]rade and commerce" to mean "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska." Neb. Rev. Stat. § 59-1601(2). The CPA further "shall not apply to actions or transactions otherwise permitted, prohibited, or regulated under laws administered by . . . any . . . regulatory body or officer acting under statutory authority of this state or the United States." Neb. Rev. Stat. § 59-1617(1).

Ordosgoitti claims Werner violated the CPA by misrepresenting information while trying to recruit potential drivers to enter into the leasing agreement and operating agreement. Filing 1 at 18-20. In particular, he claims Werner was deceptive in claiming it would assist drivers, that drivers would be independent contractors, and that they would earn "positive amounts of money." Filing 1 at 18-19. Ordosgoitti claims, "The representations, omissions, and conduct of Defendants . . . constitute deceptive and unfair trade practices that tended to and will continue to deceive and cause confusion to members of the Nebraska general public and general public at large." Filing 1 at 20.

First, for the same reasons the Court rejected Werner's preemption argument involving the Truth-in-Leasing regulations as they apply to the SAMP Act, such regulations also do not exempt Werner's conduct from potential liability under the CPA under Neb. Rev. Stat. § 1617(1). The Truth-in-Leasing regulations govern owner-operators leasing their vehicles to a motor carrier, not the reverse situation here where the carrier is the one who owns the truck. *See* 49 C.F.R. § 376.11. Thus, the exemption for conduct regulated by a federal agency in Neb. Rev. Stat. § 59-1617 does not apply.

However, Werner's argument regarding the public interest is well-founded. The CPA states that any deceptive practices must "directly or indirectly affect[] the people of the State of Nebraska" in order to be prohibited. Neb. Rev. Stat. § 59-1601(2). The Nebraska Supreme Court has made clear that it interprets the public-interest requirement as "limiting language that cannot be ignored." *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 683, 605 N.W.2d 136, 141 (2000). In so construing the CPA, it cited favorably to a South Carolina Supreme Court case interpreting a similarly worded state statute to "prevent[ the] act's application to [an] unfair or deceptive act or practice that affected only parties to [a] transaction" *Id.* (citing *Noack Enters., Inc. v. Country Corner Interiors*, 290 S.C. 475, 477, 351 S.E.2d 347, 348 (S.C. App. 1986)). Based on this limiting language, the Nebraska Supreme Court concluded the CPA did not apply to the sale of a Jeep between two private parties wherein the seller misrepresented that the car had suffered only minor damage in a prior accident. *Id.* at 680, 605 N.W.2d at 139-40. It stated that to "apply the CPA to isolated transactions between individuals that do not have an impact on consumers at large . . . would be a misconstruction of the statute." *Id.* at 684, 605 N.W.2d at 142.

Ordosgoitti's Complaint does not adequately allege a direct or indirect effect on the people of the State of Nebraska for purposes of the CPA. While he makes the bare assertion that Werner's

actions "deceive[d] and cause[d] confusion to members of the Nebraska general public," Filing 1 at 20, the factual allegations of the Complaint do not support that a public interest is at stake. *See Detroit Gen. Retirement Sys. v. Medtronic, Inc.*, 621 F.3d 800 (8th Cir. 2010) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (quoting *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949, 173 L. Ed. 2d 868)). Ordosgoitti claims only that Werner aimed its allegedly deceptive advertising at drivers it was recruiting to enter into contracts with it, not the general public. *See* Filing 1 at 18-20. As the Nebraska Supreme Court has acknowledged, the CPA is not meant to apply to private contracts or "unfair or deceptive act[s] or practice[s] that affect[] only [the] parties to [a] transaction." *Nelson*, 258 Neb. at 683, 605 N.W.2d at 141 (citation omitted). Because the CPA does not apply to "isolated transactions between individuals that do not have an impact on consumers at large," *id.* at 684, 605 N.W.2d at 142, like the contracts between drivers and Werner at issue here, the Court grants Werner's motion to dismiss Ordosgoitti's Nebraska Consumer Protection Act claim.

### E. Fraud, Negligent Misrepresentation, and Fraudulent Concealment

Finally, Ordosgoitti alleges Werner committed fraud, negligent misrepresentation, and fraudulent concealment when it provided inaccurate information to recruit potential drivers. Filing 1 at 20-22. Werner argues these claims all must be dismissed because they fail to allege the fraud in question with adequate particularity. Filing 23 at 19-24. The Court finds Ordosgoitti has stated a claim with the requisite particularity for each of his fraud-based causes of action.

Federal Rule of Civil Procedure 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Under Rule 9(b), a plaintiff must plead 'such matters as the time, place and contents of false representations, as well as the

13

identity of the person making the misrepresentation and what was obtained or given up thereby.'" *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)). "In other words, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud." *Id.* (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)). "This requirement is designed to enable defendants to respond 'specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.'" *Id.* (quoting *Abels*, 259 F.3d at 920). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* (quoting *Com. Prop. Invs. Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (1995). Nevertheless, "Rule 9(b) should be read "in harmony with the principles of notice pleading." *Id.* (quoting *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)).

The parties agree that Rule 9(b) applies to all three of Ordosgoitti's fraud-related causes of action. *See* Filing 23 at 19-24; Filing 35 at 14-16. Because Rule 9(b) is the only basis Werner raises for dismissal, any other differences between the elements of these claims are immaterial to the legal question at hand. The Court will therefore address these three causes of action together.

Ordosgoitti premises his fraud-based claims on the representations Werner made in the handouts it gave to potential drivers, including the average number of miles driven per month and the expected monthly revenues based on these averages. Filing 1 at 20-21. He alleges Werner failed to disclose material facts including the true average mileage and income numbers drivers earned and the high failure and turnover rate of past drivers. Filing 1 at 21-22. Werner argues these allegations are not particular enough and cannot support the fraud-related causes of action because they were mere predictions about future events, not affirmative factual misrepresentations.

Ordosgoitti has pled his fraud-related causes of action with adequate particularity. Specifically, he identifies the exact factual misrepresentations at issue and even attaches representative copies of the handouts wherein the representations were made to his Complaint. Werner is correct that future predictions cannot support a fraud claim. *See Fast Ball Sports, LLC v. Metro. Entm't & Convention Auth.*, 21 Neb. App. 1, 10, 835 N.W.2d 782, 791 (2013) ("A fraudulent statement relates to a 'present or preexisting fact.' Fraud 'cannot ordinarily be predicated on unfulfilled promises, or statements as to future events.'" (quoting *Linch v. Carlson*, 156 Neb. 308, 316, 56 N.W.2d 101, 105 (1952))); *accord Bye v. Nationwide Mut. Ins. Co.*, 733 F. Supp. 2d 805, 819 (E.D. Mich. 2010) (holding projected pro forma goals were not actionable in fraud because they were "a prediction about the future, not a statement about the past or even the present"). However, Ordosgoitti does not claim just that the future predictions about his potential salary were untrue, but that the factual information upon which they were purportedly based such as past driver mileage and revenue averages, was false. *See* Filing 1 at 20-22; Filing 1-3. Statements about actual past earnings and miles are factual representations adequate to support a fraud claim under Rule 9(b). *See Fast Ball Sports*, 21 Neb. App. at 10, 835 N.W.2d at 791 ("A fraudulent statement relates to a 'present or preexisting fact.'" (citation omitted)); *cf. Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004) (comparing statements of "specific, measurable claim[s]" which are actionable fraud claims with statements of "puffery" which are not capable of being ascertained and therefore not actionable). Werner's motion to dismiss Ordosgoitti's fraud, negligent misrepresentation, and fraudulent concealment claims is therefore denied.

### F. Request to Amend

In its Brief in Opposition to Defendants' Motion to Dismiss, Ordosgoitti seeks, in the alternative, leave to amend his Complaint. Filing 35 at 17-18. The Federal Rules of Civil Procedure provide that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a). However, "permission to amend may be withheld if the plaintiff does not have at least colorable grounds for relief." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 616 (8th Cir. 2003). The Court finds Ordosgoitti should be granted leave to amend his Complaint as he requests.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants Werner's Motion to Dismiss as to Ordosgoitti's claims under the Nebraska Uniform Deceptive Trade Practices Act and the Nebraska Consumer Protection Act, but denies the motion as to Ordosgoitti's claims under the Nebraska Seller-Assisted Marketing Plan Act and for fraud, negligent misrepresentation, and fraudulent concealment. Accordingly,

IT IS ORDERED:

1. Defendants' Motion to Dismiss, Filing 22, is granted as to Count II (Nebraska Uniform Deceptive Trade Practices Act) and Count III (Nebraska Consumer Protection Act) of Plaintiff's Complaint;

2. Defendants' Motion to Dismiss, Filing 22, is denied as to Count I (Nebraska Seller-Assisted Marketing Plan Act) and Count IV (fraud, negligent misrepresentation, and fraudulent concealment); and

3. Plaintiff is granted leave to amend his Complaint. Plaintiff is ordered to file his amended Complaint, if any, on or before March 19, 2021.

Dated this 4th day of March, 2021.

                                        BY THE COURT:

                                        _____

                                        Brian C. Buescher
                                        United States District Judge