IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

GLIVER ORDOSGOITTI, individually and on behalf of all others similarly situated;

Plaintiff,

vs.

WERNER ENTERPRISES, INC., and WERNER LEASING, LLC,

Defendants.

8:20-CV-421

MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss counts I and II of plaintiff Gliver Ordosgoitti's Amended Complaint. Filing 42. Ordosgoitti's first and second count allege defendants Werner Enterprises and Werner Leasing (collectively "Werner") violated Nebraska's Seller-Assisted Marketing Plan Act ("SAMP Act"), Neb. Rev. Stat. § 59-1701 et seq., and Consumer Protection Act ("CPA"), Neb. Rev. Stat. § 59-1601 et seq., by providing unsubstantiated and misleading or false information while inducing Ordosgoitti and others to lease equipment from and provide trucking services for Werner. Filing 41. For the reasons stated herein, the motion is denied.

**I. BACKGROUND**

Ordosgoitti is a resident of Florida and has worked as a truck driver for Werner since August 2018 as a designated "owner-operator." Filing 41 at 4. Werner Enterprises is a trucking company, providing transportation services to clients. Filing 41 at 4-5. Werner Leasing acquires and leases equipment (such as trucks) to drivers. Filing 41 at 5. Ordosgoitti alleges that Werner hires truck drivers it classifies as independent contractors to provide long-haul delivery services

1

as part of its owner-operator program, but Werner actually treats these drivers as employees. Filing 41 at 5-7.

Ordosgoitti alleges that Werner induces drivers to enter into a "Vehicle Lease Service Agreement," under which they lease trucks from Werner Leasing, and a "Contractor Operation Agreement," under which they agree to provide driving services to Werner, by misrepresenting the profitability of the program for the drivers as well as other aspects of the parties' contractual relationship. Filing 41 at 2-3, 9. Ordosgoitti further alleges that some of the misrepresentations Werner makes when soliciting drivers for its program come in the form of materials marketed online to members of the general public, including Nebraskans. Filing 41 at 18. According to Ordosgoitti, these online advertisements are not linked to specific transactions are not "individualized in any way." Filing 41 at 18.

This matter first came before the Court on Werner's Motion to Dismiss, Filing 22, all claims in Ordosgoitti's original Complaint, Filing 1. In the original Complaint, Ordosgoitti brought causes of action for common-law fraud, negligent misrepresentation, and fraudulent concealment as well as violations of Nebraska's SAMP Act, CPA, and Uniform Deceptive Trade Practices Act ("UDTPA"), Neb. Rev. Stat. § 87-301, et seq., on behalf of himself and other drivers he alleges were injured by Werner's misrepresentations. Filing 1. The Court denied Werner's motion with regard to the SAMP act and common law claims and granted Ordosgoitti leave to amend his Complaint after finding he had failed to state claims under the CPA and UDTPA. Filing 40. In the Amended Complaint presently before the Court, Ordosgoitti again brings causes of action for his common-law, SAMP Act, and CPA claims. Filing 41. Werner now moves to dismiss the CPA claim and asks the Court to reconsider its prior ruling on the SAMP Act claim. Filing 42; Filing 43.

## II. DISCUSSION

Werner moves to dismiss Ordosgoitti's CPA claim, arguing that whatever new allegations the Amended Complaint includes, none cure the deficiencies in Ordosgoitti's original Complaint. Filing 43 at 4-8. Werner argues that Ordosgoitti's latest allegations again fail to show that the misleading conduct alleged in the Amended Complaint reaches beyond isolated transactions at issue so as to establish an effect on the people of the State of Nebraska, as is required of a claim brought under the CPA. Filing 43 at 4-8. Werner then asks the Court to reconsider its previous determination that federal Truth-in-Leasing regulations do not apply to the transactions at issue and hold that the regulations preempt Ordosgoitti's SAMP Act and CPA claims. Filing 43 at 8-16. The Court addresses the parties' arguments below.

### A. 12(b)(6) Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v.*

*Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

### B. Nebraska Consumer Protection Act

Ordosgoitti again asserts a cause of action under the CPA, Neb. Rev. Stat. § 59-1601 et seq., alleging Werner engaged in "[u]nfair methods of competition and unfair or deceptive acts of practices in the conduct of any trade or commerce" by making false or misleading representations while recruiting potential drivers. Filing 41 at 17-19 (quoting Neb. Rev. Stat. § 59-1603). Addressing Ordosgoitti's original Complaint asserting the same cause of action, the Court found that Ordosgoitti failed to state a claim under the CPA because he had not adequately alleged facts tending to show the public interest of the people of Nebraska was impacted by the contracts between Werner and its drivers. Filing 40 at 11-13. Werner moves to dismiss the Amended Complaint's CPA cause of action, arguing Ordosgoitti again fails to adequately allege a public interest in Werner's alleged misconduct relating to its owner-operator program. Filing 43 at 4-8. Despite the similarities between Ordosgoitti's original and amended complaints that Werner notes, the Court finds the additional allegations in Ordosgoitti's Amended Complaint remedy the deficiencies that previously existed and sufficiently allege the public interest of the people of Nebraska is impacted by Werner's conduct.

As the Court noted in its order addressing Werner's Motion to Dismiss the original Complaint, "the CPA is not meant to apply to private contracts of 'unfair or deceptive act[s] or

4

practice[s] that affect[] only [the] parties to [a] transaction.'" Filing 40 at 13 (alteration in original) (quoting *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 141 (Neb. 2000)); *see also Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 36 (Neb. 2004) (noting the CPA does not apply to "isolated transactions between individuals" that have no impact on consumers at large). An allegedly deceptive practice must "directly or indirectly affect[] the people of the State of Nebraska" in order to be subject to the CPA's prohibitions. Neb. Rev. Stat. § 59-1601(2). However, when a defendant "engage[s] in a pattern of calculated conduct intended to defraud numerous citizens of [Nebraska]," Nebraska courts have found the requisite impact on the public interest necessary to sustain a claim under the CPA. *Eicher v. Mid America Financial Inv. Corp.*, 748 N.W.2d 1, 12 (Neb. 2008) (upholding defendants' liability under the CPA where defendants contacted Nebraska homeowners facing foreclosure and deceptively induced them to accept loans with disadvantageous terms calculated to lead to defendants acquiring their homes); *see also Tecumseh Poultry LLC v. Perdue Holdings, Inc.*, No. 4:12CV3032, 2012 WL 3018255, at *10 (D. Neb. July 24, 2012) (quoting Neb. Rev. Stat. § 59-1601(2)) (finding marketing to the general public of Nebraska and selling products in Nebraska "qualify as commercial activities 'directly or indirectly affecting' the Nebraska public"). The CPA provides that "any person who is injured . . . by violations of sections 59-1602 to 59-1606 . . . may bring a civil action . . . ." *Arthur*, 676 N.W.2d at 33 (quoting Neb. Rev. Stat. § 59-1609).

Ordosgoitti's Amended Complaint makes clear that he is alleging Werner made misrepresentations while "*market[ing]* the Driving Opportunity online *to the general public*, including Nebraskans," Filing 41 at 18 (emphasis added); Filing 41 at 5 ("Werner markets the Driving Opportunity online to the public at large, including residents of Nebraska."). *See* Filing 1 at 18-20. The Amended Complaint further clarifies the advertisements containing the alleged

5

misrepresentations were not linked to specific transactions, nor individualized towards drivers, and were in fact directed at, rather than merely in view of, the general public. Filing 41 at 18. While Werner's ultimate goal was to enter into individual contracts with a number of drivers, Ordosgoitti now alleges that Werner sought to do so through marketing its program to the general public in Nebraska and elsewhere. *See* Filing 41 at 18. Therefore, Werner is alleged to have engaged in commercial activities that "directly or indirectly affect[] the people of the State of Nebraska." Neb. Rev. Stat. 59-1601(2); *Tecumseh* 2012 WL 3018255, at *10 (noting marketing to Nebraskans and selling products in the state fulfills the CPA's public interest requirement).

Ordosgoitti also alleges "many members of the Nebraska general public" are included among the drivers Werner allegedly misled through its marketing and induced to enter agreements with Werner. Filing 41 at 17. Thus, Ordosgoitti has alleged facts sufficient to support a reasonable inference that Werner has "engaged in a pattern of calculated conduct intended to defraud numerous citizens of [Nebraska]." *See Eicher*, 748 N.W.2d at 12. Werner points to no case holding that the party bringing a cause of action under the CPA must be a citizen of Nebraska to do so; the statutory requirement is merely that the commercial activity that allegedly damaged the plaintiff also "directly or indirectly affect[s] the people of the State of Nebraska." Neb. Rev. Stat. § 59-1601(2); *see also* Neb. Rev. Stat. § 59-1609 ("Any person who is injured . . . by a violation of sections 59-1602 to 59-1606 . . . may bring a civil action . . . ."). By alleging that Werner successfully marketed its program not just to him, but to many members of the Nebraska general public, Ordosgoitti's Amended Complaint permits the inference that the allegedly deceptive conduct that damaged him "affect[s] the people of the State of Nebraska." *See* Neb. Rev. Stat. § 59-1601(2). The additional allegations in Ordosgoitti's Amended Complaint specifically asserting members of the Nebraska public were solicited by misleading advertisements and induced to enter

6

into the agreements at issue edges past the point of mere "threadbare recitals of the elements." *See Iqbal*, 556 U.S. at 678. Thus, Ordosgoitti's Amended Complaint states a claim under the CPA.

### C. Preemption by Federal Regulation

When addressing Ordosgoitti's original Complaint and Werner's first Motion to Dismiss, the Court rejected Werner's argument that federal Truth-in-Leasing regulations operated to preempt Ordosgoitti's SAMP Act and CPA claims. *See* Filing 40 at 7-8. Werner again seeks dismissal of the SAMP Act and CPA claim here under the theory that they are preempted. Filing 43 at 8-10. Werner asks the Court to reconsider its previous determination that the Truth-in-Leasing regulations, 49 C.F.R. § 376 et seq., which Werner argues preempt Ordosgoitti's claim, do not apply to Ordosgoitti in the present case. Filing 43 at 8-10; *see* Filing 40 at 8 ("Because the regulations do not apply to the scenario at hand, they do not preempt the Nebraska SAMP Act . . . ."). Ordosgoitti maintains the Court was correct in its previous determination, and federal regulations do not govern the case at bar because Ordosgoitti did not own his truck and did not lease it to Werner.[1] Filing 44 at 7-11. Based on the allegations in Ordosgoitti's Amended Complaint, the Court again concludes that Ordosgoitti's claims are not preempted given the facts this Court is required to consider as true in ruling on this motion.

As the Court noted when addressing the applicability of the Truth-in-Leasing regulations in its previous order, the regulations apply only when a "carrier . . . performs authorized transportation in equipment it does not own." Filing 40 at 8 (quoting 49 C.F.R. § 376.11). Under the applicable regulations, an "owner" includes one "to whom title to equipment has been issued" or "who, without title, has the right to exclusive use of equipment." 49 C.F.R. § 376.2(d)(1)-(2). A "lease" in the context of the transportation regulations at issue is "[a] contract or arrangement

---

[1] Ordosgoitti also argues the Truth-in-Leasing regulations at issue do not apply to the present case because Ordosgoitti was an agent of Werner. Filing 44 at 11 n.1.

in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." 49 C.F.R. § 376.2(e).

Werner asserts Ordosgoitti is an "owner" of the truck he leased from Werner Leasing for regulatory purposes because he acquired the right to exclusive use of the truck under the lease. Filing 43 at 10 (citing *Reichert v. Hammond*, 645 N.W.2d 519, 526 (Neb. 2002) (citing Black's Law Dictionary for a general legal definition of "lease")). Then, Werner argues, by way of the "Contractor Operating Agreement" between Ordosgoitti and Werner Enterprises, that Werner Enterprises "leased" the truck from Ordosgoitti, bringing their arrangement under the purview of federal Truth-in-Leasing regulations. Filing 43 at 10. The allegations in the Amended Complaint, taken as true and used to draw all reasonable inferences in Ordosgoitti's favor, however, do not support Werner's contentions.

First, the Amended Complaint does not specifically allege or establish Ordosgoitti gained the right to exclusive use of the truck under his lease with Werner Leasing, and there are some facts alleged that suggest Ordosgoitti's use may not have been exclusive. *See, e.g.*, Filing 41 at 14 (noting Werner covers maintenance related costs). Therefore, the Amended Complaint does not establish that Ordosgoitti could meet the definition "owner" for regulatory purposes. The Court acknowledges that Ordosgoitti could be considered an "owner" for the purposes of Truth-in-Leasing regulations if Ordosgoitti had the exclusive right to use the truck.[2] *See* 49 C.F.R. §

---

[2] The Court also notes that Ordosgoitti's Amended Complaint and subsequent arguments opposing the present Motion to Dismiss indicate Werner, the motor carrier, owns the trucks at issue. *See, e.g.*, Filing 44 at 8 ("After all, there is no need for regulation of lease terms where the motor carrier owns the trucks to begin with."). The Court notes that a party holding title in the equipment at issue meets the regulatory definition of owner, *see* 49 C.F.R. § 376.2(d)(1), and the regulations apply when a motor carrier "performs authorized transportation in equipment it does not own," 49 C.F.R. § 376.11. The Court need not and does not reach the questions of whether Werner Enterprises was an owner of the truck Ordosgoitti leased from Werner Leasing and what effect that would have on the applicability of the Truth-in-Leasing regulations at issue in deciding the present motion.

8

376.2(d)(2) (noting owner includes one "who, without title, has the right to exclusive use of equipment").

Even if the Court were to assume Ordosgoitti was an "owner" of the truck he leased, as Werner suggests, Werner's contention that the Contractor Operating Agreement between it and Ordosgoitti is actually one of "two 'leases' at issue here," is unsupported by the allegations in the Amended Complaint. *See* Filing 41. Ordosgoitti does not allege that he leased the equipment he himself had leased back to Werner or provided use of the equipment to Werner. *See* Filing 41. Ordosgoitti alleges he and other drivers "used [the] trucks [that they leased from Werner Leasing] to provide *driving services* to Werner." Filing 41 at 2 (emphasis added). Whether the Contractor Operating Agreement constituted a lease depends on the agreement's terms, and the agreement is not presently before the Court.[3] *Compare Shimko v. Jeff Wagner Trucking, LLC*, No. 11–cv–831–wmc, 2013 WL 10075919, at *4 (W.D. Wis. June 28, 2013) (citations omitted) (finding an agreement to provide trucking services was not necessarily a lease absent a "lease-back" provision in the contractor agreement), *with Bonkowski v. Z Transp., Inc.*, No. 00–C–5396, 2004 WL 524723, at *2 (N.D. Ill. Mar. 5, 2004) (finding a motor carrier had leased equipment where agreements with independent contractor contained a specific "lease-back" provision; *Owner–Operator Indep. Drivers Ass'n, Inc. v. Arctic Exp., Inc.*, 87 F. Supp. 2d 820, 827 (S.D. Ohio 2000) (same); Dart Transit Company–Petition for Decl. Order, 9 I.C.C.2d 701, 1993 WL 220182 (June 28, 1993) (same). Accepting Ordosgoitti's allegations as true and drawing the reasonable inference in his favor, the Amended Complaint does not indicate the Contractor Operating Agreement was a "lease" within the meaning of the Truth-in-Leasing regulations because the allegations do not

---

[3] The Court notes that once the Court has the opportunity to review the agreements themselves, the terms of the agreements and other submitted evidence could cause the Court to conclude certain of Plaintiffs' claims are preempted by federal law.

9

establish Werner contracted for "use of equipment." *See* 49 C.F.R. § 376.2(e) (defining "lease" under regulations). Thus, Werner has not demonstrated that the Truth-in-Leasing regulations it argues preempt Ordosgoitti's claims apply to this case.

### III. CONCLUSION

For the reasons set forth above, Werner's Motion to Dismiss, Filing 42, is denied.

IT IS ORDERED:

1. Defendants' Motion to Dismiss, Filing 42, is denied.

Dated this 30th day of June, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge