IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| GLIVER ORDOSGOITTI, individually and on behalf of all others similarly situated;<br><br><br>Plaintiff,<br><br><br>vs.<br><br><br>WERNER ENTERPRISES, INC., and WERNER LEASING, LLC,<br><br><br>Defendants. | **8:20-CV-421**<br><br><br><br>**MEMORANDUM AND ORDER** |

## I.    INTRODUCTION

Gliver Ordosgoitti brings a putative class-action lawsuit on behalf of a class of truck drivers who entered into contractor operating, vehicle-lease, and service agreements with defendants Werner Enterprises, Inc. ("Werner Enterprises"), and Werner Leasing, LLC ("Werner Leasing"). The lawsuit alleges that Defendants violated the Nebraska Seller-Assisted Marketing Plan Act ("SAMP Act") and the Nebraska Consumer Practices Act ("NCPA"), and committed fraud, negligent misrepresentation, and fraudulent concealment. Filing 41 at 10–21. Before the Court is Defendants' Motion for Partial Summary Judgment, which argues that Ordosgoitti signed a waiver of his ability to bring a class-action suit against Defendants. Filing 65. For the reasons stated herein, the Court grants Defendants' Motion.

## II.      BACKGROUND

Ordosgoitti, a Florida resident, served as an "owner operator" truck driver for Werner Enterprises from August of 2018 to January of 2021. Filing 41 at 4; Filing 75-6 at 1. On August 23, 2018, Ordosgoitti, who formerly worked as a "company driver" for Werner Enterprises, entered into a lease agreement for a truck with Werner Leasing, a wholly owned subsidiary of Werner Enterprises. Filing 67-1 at 2; Filing 67-3 at 1; Filing 69-1 at 1. That same day, Ordosgoitti signed a Contractor Operating Agreement with Werner Enterprises. Filing 75-2 at 1–17. Pursuant to the Contractor Operating Agreement, Ordosgoitti provided freight-shipping services for Werner Enterprises. Filing 75-2 at 4. The agreement stated that Ordosgoitti, as an independent contractor, would use the truck he leased from Werner Leasing, identified as the "EQUIPMENT," to transport, load, and unload shipments on Werner Enterprises' behalf. Filing 75-2 at 4, 14; Filing 67-3 at 10 (showing VIN number that is identical to the VIN number of the vehicle identified in the 2018 Contractor Operating Agreement). While the lease agreement with Werner Leasing had a term of thirty-six months, terminable by either party every twelve months, Filing 67-3 at 6, 10, the Contractor Operating Agreement was indefinite and terminable by either party.[1] Filing 67-2 at 13. Ordosgoitti and Werner Enterprises entered into a second Contractor Operating Agreement on June 12, 2019, which superseded the prior one. Filing 75-3 at 1–17. The provisions of the second Contractor Operating Agreement are substantively similar to the provisions in the first. *Compare* Filing 75-2 at 1–17, *with* Filing 75-3 at 1–17.

On January 10, 2020, Ordosgoitti signed an amendment to the leasing agreement he had with Werner Leasing. Filing 69-1 at 2; Filing 69-2 at 1. A few months later, on June 11, 2020, Ordosgoitti and Werner Enterprises entered into a third Contractor Operating Agreement. Filing

---

[1] Both agreements state that the laws of the United States and Nebraska govern. Filing 67-2 at 13; Filing 67-3 at 9.

67-2 at 1–19. Ordosgoitti claims that he was instructed to sign this agreement if he wanted to continue driving for Werner Enterprises. Filing 69-1 at 1. He further states that he did not have an opportunity to discuss or negotiate the terms of the agreement. Filing 69-1 at 1–2.

The 2020 Contractor Operating Agreement, like the 2018 and 2019 ones, stated that Ordosgoitti would provide freight shipping services to Werner Enterprises and identified the truck he was leasing from Werner Leasing as the "EQUIPMENT" he would use to transport, load, and unload freight on behalf of Werner Enterprises. Filing 67-2 at 4, 15. However, the 2020 Contractor Operating Agreement forbade Ordosgoitti from using the truck he was leasing from Werner Leasing to provide services to other carriers. Filing 67-2 at 4. Importantly, the 2020 Contractor Operating Agreement also included a class-action-waiver provision stating:

> **WAIVER. CONTRACTOR AND CONTRACTOR'S WORKERS WAIVE ANY RIGHT TO INITIATE, JOIN (I.E., OPT IN TO), REMAIN IN (I.E., NOT OPT OUT OF), OR OTHERWISE PARTICIPATE IN ANY CLASS ACTION, COLLECTIVE ACTION, CONSOLIDATED ACTION, OR REPRESENTATIVE ACTION BROUGHT AGAINST CARRIER, INCLUDING BUT NOT LIMITED TO SUCH ACTIONS BROUGHT UNDER STATE OR FEDERAL LAW AND THOSE ARISING UNDER THE FAIR LABOR STANDARDS ACT.**

Filing 67-2 at 13.[2]

The relationship between Ordosgoitti and Werner Leasing and Werner Enterprises broke down, however, and Ordosgoitti filed suit against Werner Leasing and Werner Enterprises on June 25, 2019. Filing 1. In his Amended Complaint, Ordosgoitti generally alleges that Defendants made misrepresentations to him and other drivers to induce them to enter into leasing agreements with Werner Leasing and contractor operating agreements with Werner Enterprises. Filing 41 at 2–3,

---

[2] The 2018 and 2019 Contractor Operating Agreements also had class-action waivers embedded within a mandatory-arbitration clause, which waived Ordosgoitti's right to pursue class-action arbitration. *See* Filing 75-2 at 13; Filing 75-3 at 13. The class-action waiver in the 2020 Contractor Operating Agreement, however, is in a stand-alone provision. Filing 67-2 at 13.

9. Defendants filed their Motion for Partial Summary Judgment on Ordosgoitti's putative class-action claims on December 9, 2021.

## III.   ANALYSIS

### A.  Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *See Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

4

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. Enforceability of the Class-Action Waiver for Claims Against Werner Enterprises

Both Werner Enterprises and Werner Leasing have moved for summary judgment based on the class-action waiver. The Court addresses the applicability of the waiver as it relates to the two defendants in turn. Werner Enterprises seeks dismissal of Ordosgoitti's putative class-action claims by enforcing the class-action waiver provision in the 2020 Contractor Operating Agreement against Ordosgoitti. Filing 66 at 1. Ordosgoitti does not contest that both he and Werner Enterprises are parties to the Contractor Operating Agreement and that the terms unambiguously waive Ordosgoitti's right to bring a class-action suit against Werner Enterprises. Instead, Ordosgoitti argues the waiver is unenforceable based on rescission, unconscionability, or equity concerns. The Court addresses these arguments and concludes that the waiver provision is enforceable. Accordingly, Ordosgoitti may not assert a putative class-action lawsuit against Werner Enterprises.

    *1.  Rescission Under Fraud and the Nebraska SAMP Act*

Ordosgoitti argues that the waiver provision is unenforceable because, under the Nebraska SAMP Act and common-law fraud, the Contractor Operating Agreement is subject to rescission. Filing 68 at 5–7. Ordosgoitti contends that if the Contractor Operating Agreement is subject to rescission, then the waiver provision in the Contractor Operating Agreement may also be rescinded. Filing 68 at 5–7. In response, Defendants assert that the rescission remedy is incompatible with Ordosgoitti's damages claim for fraudulent inducement and, therefore, the two cannot be brought together. Filing 74 at 4–6.

Nebraska law requires that when a defendant fraudulently induces the plaintiff to enter a contract the plaintiff must choose to "either affirm the contract and sue for damages or disaffirm and be reinstated to the position existing prior to the contract." *Little v. Gillette*, 354 N.W.2d 147, 153 (Neb. 1984). If the plaintiff elects to affirm the contract and sue for damages, Nebraska courts "adhere[ ] to what is known as the 'benefit-of-the-bargain' rule, that is, that the measure of general damages for fraud in inducing the purchase of property is the difference between the actual value of the property at the time of the purchase and the value it would have had if the seller's representation had been true." *Rothery v. Pounds*, 33 N.W.2d 347, 348 (Neb. 1948). If the plaintiff decides to disaffirm the contract, a court in equity will rescind the contract as if it never existed and place the parties in the position they would have occupied had they never entered into the contract. *Bauermeister v. McReynolds*, 571 N.W.2d 79, 88 (Neb. 1997) ("The purpose of rescission is to place the parties in a status quo, that is, return the parties to their position which existed before the rescinded contract."), *opinion modified on denial of reh'g*, 575 N.W.2d 354 (Neb. 1998). However, a plaintiff cannot choose both remedies because "a party cannot proceed on a theory of recovery which is premised on the existence of a contract and at the same time proceed

6

alternatively on a theory that is premised on the lack of a contract." *Genetti v. Caterpillar, Inc.*, 621 N.W.2d 529, 545–46 (Neb. 2001).

Ordinarily, rescission applies to the entire contract and places the parties in the position they occupied before the contract existed. *See James v. Hogan*, 47 N.W.2d 847, 851 (Neb. 1951) ("An indivisible contract may not be rescinded in part and a part remain executed. If a single indivisible contract is rescinded at all it must be the entire contract, and the parties placed in the situation they were at the time the contract was made as nearly as the circumstances will permit."), *modified*, 48 N.W.2d 756 (Neb. 1951). In his Amended Complaint, Ordosgoitti requested an award for compensatory damages. Filing 41 at 22. Now, Ordosgoitti seeks to proceed in piecemeal fashion by rescinding the class-action waiver provision of the Contractor Operating Agreement and collecting damages for fraudulent inducement of the rest of the agreement. Nebraska law does not allow him to seek these inconsistent remedies. *See J.B. Alfree Mfg. Co. v. Grape*, 82 N.W. 11, 13 (Neb. 1900) ("A count for rescission of a contract for fraud and a count for damages for the fraud or recovery of the consideration cannot be joined. They are repugnant. One affirms and the other disaffirms the contract."). Because Ordosgoitti pursues damages for fraudulent inducement, he cannot now attempt to avoid the waiver provision through rescission. *See Genetti*, 621 N.W.2d at 545–46.

Ordosgoitti's attempt to nullify the class-action waiver by invoking the Nebraska SAMP Act is also unavailing. The Nebraska SAMP Act provides that if a seller violates the Act, "the contract shall be voidable by the purchaser and unenforceable by the seller . . . and the purchaser shall be entitled to receive from the seller all sums paid to the seller when the purchaser is able to return all equipment, supplies, or products delivered by the seller." Neb. Rev. Stat. § 59-1752. Given that this provision is essentially the statutory analog of the common-law remedy of

rescission—it voids a contract and attempts to place both parties in the position they were in before entering into the contract, *see Bauermeister*, 571 N.W.2d at 88 (describing common-law rescission)—it is doubtful that Ordosgoitti can pursue damages under his fraud claims and attempt to void the Contractor Operating Agreement under the Nebraska SAMP Act simultaneously.

In any event, Ordosgoitti cannot void the Contractor Operating Agreement under the Nebraska SAMP Act because he failed to comply with its statutory prerequisites. Section 59-1752 of the Nebraska SAMP Act required Ordosgoitti to provide notice to Werner Enterprises within one year of entering into the Contractor Operating Agreement that he was seeking to void the agreement. *See* Neb. Rev. Stat. § 59-1752 (mandating that, if a contract violates the SAMP Act, "then within one year of the date of the contract at the election of the purchaser upon written notice to the seller, the contract shall be voidable by the purchaser and unenforceable by the seller"). Ordosgoitti signed the Contractor Operating Agreement on June 11, 2020. Filing 67-2 at 1–19. His Amended Complaint contains no allegations, nor has he provided any evidence, that he gave notice to Werner Enterprises that he wanted to void the Contractor Operating Agreement for violating the Nebraska SAMP Act. Accordingly, the class-action waiver provision of the Contractor Operating Agreement cannot be voided under the Nebraska SAMP Act.

   *2.   Unconscionability and Denying Enforcement of Waiver in Equity*

Ordosgoitti next argues that the class-action wavier should not be enforced because it is unconscionable. Filing 58 at 7–12. Similarly, Ordosgoitti contends that because Werner Enterprises is in effect asking for specific performance of the class-action waiver it is subject to equitable modification. Filing 68 at 12–13. The Court rejects both arguments.

Whether a contract provision is unconscionable is a question of law. *See Myers v. Neb. Inv. Council*, 724 N.W.2d 776, 799 (Neb. 2006) ("The unconscionability of a contract provision

8

presents a question of law."). The term "unconscionable" means "manifestly unfair or inequitable." *Id.* In determining whether a contract provision is manifestly unfair or inequitable, Nebraska Courts consider both procedural unconscionability and substantive unconscionability. *Ficke v. Wolken*, 858 N.W.2d 249, 258 (Neb. Ct. App. 2014) ("A contract can be either procedurally or substantively unconscionable."). Ordosgoitti attacks the class-action waiver as both substantively and procedurally unconscionable.

"Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh." *Adams v. Am. Cyanamid Co.*, 498 N.W.2d 577, 590 (Neb. Ct. App. 1992) (quoting *Schroeder v. Fageol Motors, Inc.*, 544 P.2d 20, 23 (Wash. 1975)). To be substantively unconscionable, the contract provision must be "grossly unfair under the circumstances as they existed at the time the contract was formed." *Id.* In a commercial setting, substantive unconscionability by itself is usually insufficient. *Myers*, 724 N.W.2d at 799.

Ordosgoitti contends that the class-action waiver is substantively unconscionable because it prevents the putative class members from proceeding collectively under Federal Rule of Civil Procedure 23. Filing 68 at 8. According to Ordosgoitti, the class-action waiver is, in effect, an unlawful exculpatory clause because enforcing the waiver forces putative class members to sue individually and thereby reduces the likelihood of their recovery. Filing 68 at 8–11.

The ability to proceed collectively under Federal Rule of Civil Procedure 23 is a procedural right that may be waived contractually. *Deposit Guar. Nat'l Bank, Jackson v. Roper*, 445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims."); *see also Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1053 (8th Cir. 2013) ("[I]f an employee must affirmatively opt in to any such class action, surely the employee has the power to waive participation in a class action as well."); *Cellular Sales of Mo.,*

*LLC v. Nat'l Lab. Rels. Bd.*, 824 F.3d 772, 776 (8th Cir. 2016) (upholding contract that included a class-action waiver within a mandatory-arbitration provision). Under Nebraska law, a waiver that leaves a party without any adequate remedy is substantively unconscionable. *See Adams*, 498 N.W.2d at 590 ("One-sided agreements whereby one party is left without a remedy for another party's breach are oppressive and should be declared unconscionable." (quoting *Durham v. Ciba-Geigy Corp.*, 315 N.W.2d 696, 700 (S.D. 1982))). For example, the Nebraska Court of Appeals in *Adams* determined that a limitation-of-damages clause that excluded the plaintiffs' ability to recover consequential damages was substantively unconscionable because it left the plaintiffs "without any substantial recourse for [their] loss." *Id.*

Ordosgoitti argues that the class-action waiver functions as an exculpatory clause immunizing Werner Enterprises from liability because it reduces the likelihood putative class members will recover damages. Filing 68 at 10 (citing New Light Co. v. Wells Fargo Alarm Servs., Div. of Baker Protective Servs., Inc., 525 N.W.2d 25, 31 (Neb. 1994) (noting that an exculpatory clause that excluded liability for gross negligence and willful and wanton misconduct was contrary to Nebraska public policy)). The Court disagrees. Ordosgoitti's argument is belied by the fact that he has brought this lawsuit and seeks compensatory damages, recovery of all the money paid to become a driver for Werner Enterprises, and actual damages. In his Amended Complaint, Ordosgoitti alleges that Werner Enterprises represented that the drivers under the Contractor Operating Agreements would make $3,662.26 per month or, if operating in teams, $6,331.25 per month. Filing 41 at 15–16. He claims that the income actually earned was "very low" and that the average driver earned "nowhere close to the represented income." Filing 41 at 16, 18. Defendants also point out that Ordosgoitti is seeking all the money he paid to become a driver of Werner Enterprises, which would include the amount he paid under the Leasing Agreement to lease his

truck. Filing 74 at 8. The evidence Defendants filed with the Court shows that Ordosgoitti's lease payments totaled over $32,500 annually. Filing 75-1 at 2; Filing 75-5 at 1–2. The potential damages in this case are not so insignificant that a potential plaintiff would not bring a claim individually. Thus, there is no evidence that Ordosgoitti or any putative class-action member would be left without an adequate remedy.[3]

Because the contract is not substantively unconscionable, the court must consider whether it is procedurally unconscionable. *Ficke*, 858 N.W.2d at 258 (explaining that a contract can be either substantively or procedurally unconscionable, but only substantive unconscionability was at issue in the case). The Court finds that Ordosgoitti also fails to show procedural unconscionability. "[P]rocedural unconscionability relates to impropriety during the process of forming a contract." *Adams*, 498 N.W.2d at 590 (quoting *Schroeder*, 544 P.2d at 23). The disparity in respective bargaining positions of each party to a contract is a key factor. *Myers*, 724 N.W.2d at 799. Courts in Nebraska look at the "totality of the circumstances" when determining procedural unconscionability, including "(1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." *Adams*, 498 N.W.2d at 590 (quoting *Am. Nursery Prod., Inc. v. Indian Wells Orchards*, 797 P.2d 477, 481 (Wash. 1990)).

Ordosgoitti emphasizes that his bargaining position was substantially weaker than that of Werner Enterprises, a large corporate entity. Filing 68 at 11. He further highlights that he had no

---

[3] Ordosgoitti relies on *Scott v. Cingular Wireless*, 161 P.3d 1000, 1006-08 (Wash. 2007), which found that a class-action waiver in an arbitration provision was unconscionable because the small amount of damage to each individual plaintiff combined with the waiver effectively immunized the defendant from liability. In *Scott*, the plaintiffs alleged that the defendant had overcharged consumers between $1 and $45 per month. *Id.* at 1002. The court held that the class-action waiver was unconscionable because it "effectively exculpate[ed] the drafter from potential liability for small claims, no matter how widespread" because "only a lunatic or a fanatic sues for $30." *Id.* at 1007–08. In contrast to the plaintiffs in *Scott*, Ordosgoitti does not allege Werner Enterprises caused him minor harm for which no reasonable person would sue individually. Thus, the decision in *Scott* does not persuade the Court that the class-action waiver in this case is substantively unconscionably.

meaningful choice but to sign the Contractor Operating Agreement because Werner Enterprises told him he could no longer be its driver unless he signed the agreement. Filing 68 at 11–12; Filing 69-1 at 1–2. In response, Werner Enterprises points out that the class-action wavier is conspicuously written in the Contractor Operating Agreement and that it provided Ordosgoitti ample time to review the agreement. Filing 74 at 9–10.

The class-action waiver is not procedurally unconscionable. Even assuming that the Contractor Operating Agreement can be characterized as a contract of adhesion—which is a contract imposed by a stronger party upon a weaker one on a "take this or nothing basis," *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 697 (Mo. 1982)—in Nebraska "adhesion contracts are not automatically unconscionable or void," *Kosmicki v. State*, 652 N.W.2d 883, 893 (2002). Moreover, there is no evidence that Ordosgoitti was unable to reject the Contractor Operating Agreement and seek employment elsewhere. *Cf. Ray Tucker & Sons, Inc. v. GTE Directories Sales Corp.*, 571 N.W.2d 64, 70 (Neb. 1997) (noting that there was no evidence that the plaintiff could have achieved effective advertising from another source besides the defendant). Furthermore, similar class-action waivers appeared in the 2018 and 2019 Contractor Operating Agreements that Ordosgoitti signed. *See Adams*, 498 N.W.2d at 590 (looking to the parties' prior course of dealing to determine procedural unconscionability). Accordingly, given that the waiver is conspicuous, the lack of evidence Ordosgoitti could not have found employment elsewhere, and the fact he had signed agreements containing similar waivers in the past, the Court concludes that the class-action waiver is not procedurally unconscionable.

Finally, Ordosgoitti seeks to invalidate the class-action waiver as an inequitable request for specific performance. A court may refrain from granting specific performance if it would "be inequitable or unjust due to hardship on the one from whom performance is sought." *Tierney v.*

*Four H Land Co. Ltd. P'ship*, 852 N.W.2d 292, 301 (Neb. 2014) (quoting *Mohrlang v. Draper*, 365 N.W.2d 443, 447 (Neb. 1985)). Even if enforcing the class-action waiver could be characterized as granting the remedy of specific performance, Ordosgoitti has not shown that enforcing the class-action waiver imposes undue hardship on him or would otherwise be inequitable. Accordingly, the Court will enforce the class-action waiver against Ordosgoitti as to his putative class-action claims against Werner Enterprises.

**C.  Enforceability of the Class-Action Waiver for Claims Against Werner Leasing**

Werner Leasing also seeks to enforce the class-action waiver against Ordosgoitti's putative class-action claims, even though Wearner Leasing is not a signatory to the Contractor Operating Agreement that contains the class-action waiver. Ordosgoitti responds by first arguing, as he did against Werner Enterprises, that the wavier is subject to rescission under the Nebraska SAMP Act and common-law fraud and that it is unenforceable as unconscionable and inequitable. For the same reasons as stated earlier, the Court rejects these arguments. However, Ordosgoitti also contests Werner Leasing's ability to enforce the class-action waiver where Werner Leasing is not a signatory to the Contractor Operating Agreement. The Court therefore turns to whether Werner Leasing, a nonsignatory, may nevertheless enforce the class-action waiver.

*1.  Availability of Alternative Estoppel*

Whether a nonsignatory can enforce a class action waiver against a party to a contract is a question of state law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (holding that "traditional principles" of state law govern whether a nonparty to a contract can enforce an arbitration clause). The United States Supreme Court has recognized that "traditional principles" of state law "allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party

13

beneficiary theories, waiver and estoppel.'" *Id.* at 631 (quoting 21 R. Lord, Williston on Contracts § 57:19, 183 (4th ed. 2001)). However, this Court has not found Nebraska caselaw directly addressing whether and under what conditions a nonsignatory can enforce a class-action waiver against a signatory. "When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue." *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006).

Werner Leasing urges the Court to apply the theory of "alternative estoppel" to empower it to enforce the class action waiver against Ordosgoitti.[4] Filing 66 at 9–13. Alternative estoppel has primarily arisen in the context of arbitration clauses, in which a nonsignatory attempts to enforce an arbitration clause against a party to the agreement containing the arbitration clause. *See CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798–800 (8th Cir. 2005) (permitting a nonsignatory to enforce an arbitration clause under alternative estoppel). Under alternative estoppel, a nonsignatory may enforce an arbitration clause "when the relationship of the persons, wrongs and issues involved is a close one." *Grizzle*, 424 F.3d at 799.

As an initial matter, the Court has not located any Nebraska cases applying alternative estoppel. However, the Court has little hesitation concluding that the Nebraska Supreme Court would adopt alternative estoppel to allow a nonsignatory to enforce contract provisions against a party to the contract. The Nebraska Supreme Court has regularly applied principles of equitable estoppel in contract cases. *See, e.g.*, *Brick Dev. v. CNBT II LLC*, 918 N.W.2d 824, 833 (Neb. 2018) ("The doctrine of equitable estoppel is applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he or she

---

[4] Werner Leasing does not reference the term "alternative estoppel" in its briefing but does rely heavily on the Eighth Circuit case *CD Partners, LLC v. Grizzle*, 424 F.3d 795 (8th Cir. 2005), which applied alternative estoppel to allow a nonsignatory to enforce an arbitration clause against a party to the contract.

has acquiesced or of which he or she has accepted any benefit."). It has also recognized that "other jurisdictions have applied equitable principles of estoppel to compel nonsignatories to participate in an arbitration." *Pearce v. Mut. of Omaha Ins. Co.*, 876 N.W.2d 899, 906–07 (Neb. 2016). Consequently, judges in this district have applied alternative estoppel to allow nonsignatories to enforce arbitration clauses against signatories to an agreement. *See Nelson v. Kunkle*, No. 8:19-CV-329, 2020 WL 1323899, at *5–6 (D. Neb. Mar. 20, 2020); *Wolfe Elec. Co. v. Corp. Bus. Sols., Inc.*, No. 4:13CV3040, 2013 WL 1914674, at *5–6 (D. Neb. May 8, 2013); *Schreiner v. Credit Advisors, Inc.*, No. 8:07CV78, 2007 WL 2904098, at *9 (D. Neb. Oct. 2, 2007).

Ordosgoitti does not dispute that the Nebraska Supreme Court would adopt alternative estoppel, but instead argues that alternative estoppel is inapplicable here, because it is primarily used to allow nonsignatories to enforce arbitration clauses, not stand-alone class-action waivers. Filing 68 at 15–16. This fact is important, Ordosgoitti asserts, because the Federal Arbitration Act and the liberal federal policy favoring arbitration are the main reasons Courts have employed alternative estoppel. Filing 68 at 15–16. The Court disagrees. Equitable principles used to enforce contract provisions exist independently of the federal policy supporting arbitration. Rather than being solely based on promoting arbitration, the linchpin of alternative estoppel "is equity—fairness." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000) (outlining alternative estoppel). More specifically, alternative estoppel recognizes that "it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 833 (8th Cir. 2010). It would be just as unfair to allow a signatory to rely on an agreement in formulating its claims but to disavow availability of other clauses of that same agreement, such as a clause waiving class-action claims.

Indeed, alternative estoppel has been applied outside the arbitration context. For example, other courts have applied the doctrine to determine the enforceability of forum-selection clauses. *See, e.g.*, *Guild Mortg. Co. v. Welberg*, No. 3:16-CV-02173-BR, 2017 WL 1371273, at *5–6 n.4 (D. Or. Apr. 14, 2017) (finding the Eighth Circuit's view of alternative estoppel "instructive" and applying California's rendition of alternative estoppel to enforce a forum-selection clause); *4580 Thousand Oaks Boulevard Corp. v. Feldman*, No. CV1204462MMMJCGX, 2012 WL 12884636, at *4 (C.D. Cal. July 30, 2012) (reviewing alternative estoppel to determine the enforceability of a forum-selection clause); *see also* *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 n.7 (11th Cir. 2012) ("Although all of the cases we cite concern the application of equitable estoppel to contracts with arbitration clauses rather than forum-selection clauses, the equitable estoppel analysis is the same."). The Court discerns no reason why alternative estoppel should apply to arbitration clauses and forum-selection clauses, but not to class-action waivers. *See* *Hennessey v. Kohl's Corp.*, No. 4:19 CV 1866 DDN, 2021 WL 5415031, at *8 (E.D. Mo. Nov. 19, 2021) ("While 'a vast majority of cases that address class action waivers do appear within the context of arbitration agreements, there is no logical reason to distinguish a waiver in the context of an arbitration agreement from a waiver in the context of any other contract.'" (quoting *Palmer v. Convergys Corp.*, No. 7:10-CV-145 HL, 2012 WL 425256, at *2 (M.D. Ga. Feb. 9, 2012))). Therefore, the Court concludes that the Nebraska Supreme Court is likely to apply alternative estoppel to class-action waivers.

### 2. *Application of Alternative Estoppel*

Having determined that alternative estoppel is not limited to the arbitration-clause context, the Court concludes that alternative estoppel permits Werner Leasing to enforce the class-action waiver against Ordosgoitti. A nonsignatory may bind a signatory to a class-action wavier "under

16

the 'alternative' estoppel theory when the relationship of the persons, wrongs and issues involved is a close one." *Grizzle*, 424 F.3d at 799. "Alternative estoppel typically relies, at least in part, on the claims being so intertwined with the agreement containing the [applicable] clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the . . . [applicable] clause of that same agreement." *PRM Energy Sys.*, 592 F.3d at 835. Alternative estoppel applies based on concerted misconduct when, at a minimum, the plaintiff alleges "coordinated behavior between a signatory and a nonsignatory." *Id.* (quoting Donaldson Co., Inc. v. Burroughs Diesel, Inc., 581 F.3d 726, 734 (8th Cir. 2009)). Thus, "'[t]he concerted-misconduct test requires allegations of "pre-arranged, collusive behavior" demonstrating that the claims are "intimately founded in and intertwined with' the agreement at issue.""" *Id.* (quoting *Donaldson*, 581 F.3d at 734–35) (citation omitted). However, "merely alleging that a non-signatory conspired with a signatory is insufficient to invoke equitable estoppel." *In re Wholesale Grocery Prod. Antitrust Litig.*, 707 F.3d 917, 922–23 (8th Cir. 2013).

An examination of two cases elucidates the kind of pre-arranged, collusive behavior that is sufficient for alternative estoppel to apply and what behavior is not sufficient. In *MS Dealer Serv. Corp. v. Franklin*, the plaintiff contractually agreed to purchase a car from a dealership. 177 F.3d 942, 944 (11th Cir. 1999), *abrogated in part on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). The purchase agreement incorporated by reference a "Retail Installment Contract" in which the plaintiff was charged $990.00 for a service contract through the defendant, MS Dealer. *Id.* In addition, the purchase agreement contained an arbitration clause. *Id.* When the plaintiff had problems with the vehicle, she sued the dealership and MS Dealer, alleging that they "improperly cooperated, conspired and otherwise colluded" to overcharge her through the service contract. *Id.* at 945. MS Dealer, who was a nonsignatory to the purchase agreement with the

17

arbitration clause, sought to compel arbitration. *Id.* The Eleventh Circuit Court of Appeals held that MS Dealer could compel arbitration because the plaintiff's claims against the dealership and MS Dealer were "based on the same facts and are inherently inseparable." *Id.* at 948 (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993)). The Court further noted that the plaintiff "specifically allege[d] that MS Dealer worked hand-in-hand with [the dealership] and Chrysler Credit Corporation in this alleged fraudulent scheme." *Id.*

In contrast, in *Donaldson,* the Eighth Circuit Court of Appeals declined to permit a nonsignatory to compel arbitration against a signatory to an agreement with an arbitration clause. *Donaldson*, 581 F.3d at 726. The nonsignatory in *Donaldson* was a defendant who brought crossclaims against its codefendants. *Id.* at 730. The crossclaim allegations included accusations that "Cross–Defendants concealed and misrepresented the fact that Western Star Heritage model truck was designed, manufactured and sold with an allegedly defective intake system" and that "Cross–Defendants [sic] conduct was intentional and/or done with gross negligence." *Id.* at 734 (quoting defendant's crossclaim). In rejecting the nonsignatory's attempt to enforce an arbitration clause, the Eighth Circuit Court of Appeals noted that "[a]lthough [the nonsignatory's] cross-claim made common allegations against [the signatory cross-defendants], it did not make any allegations suggesting that [they] 'knowingly acted in concert,' 'improperly cooperated,' or 'worked hand-in-hand.'" *Id.* The court further observed that the nonsignatory's claims did not "allege the level of 'substantially interdependent and concerted misconduct' required by the case law." *Id.* at 735.

The allegations and evidence in this case are closer to the situation in *MS Dealer* than the one in *Donaldson*. First, it is noteworthy that Werner Leasing is a wholly owned subsidiary of Werner Enterprises, and thus Werner Leasing has a significant connection to a signatory of the Contractor Operating Agreement containing the class-action waiver. Filing 67-1 at 2; Filing 67-5

at 9. Second, Ordosgoitti has alleged that Werner Leasing and Werner Enterprises engaged in pre-arranged, collusive behavior. In his Amended Complaint, Ordosgoitti contends that his class action lawsuit arises out of a "Driving Opportunity" in which "truck drivers leased trucks from Werner Leasing and in turn used such trucks to provide driving services to Werner [Enterprises]." Filing 41 at 2. The Amended Complaint further alleges that Werner Leasing and Werner Enterprises "made misrepresentations and/or failed to disclose material information" to "induce and mislead Drivers into purchasing and operating the Driving Opportunity." Filing 41 at 2, 19. Ordosgoitti's allegations, therefore, accuse both Werner Enterprises and Werner Leasing of working in concert to induce him and others to enter into the "Driving Opportunity."

Moreover, the exhibits filed with Ordosgoitti's Complaint and with Defendants' Motion for Summary Judgment seem to confirm the alleged coordination between Werner Enterprises and Werner Leasing.[5] One of the Amended Complaint's exhibits, a flier from Werner Enterprises, touts the leasing program offered by Werner Leasing that "allows drivers the ability to lease a brand new never before driven truck." Filing 41-1 at 4. The Contractor Operating Agreement specifically identifies the truck Ordosgoitti leased from Werner Leasing as the "EQUIPMENT" Ordosgoitti must use to provide freight-shipping services to Werner Enterprises. Filing 67-2 at 4. The agreement also prevents him from using the leased truck to provide services to other motor carriers. Filing 67-2 at 4. Based on the allegations and evidence in this case, Ordosgoitti's claims rest on contentions that Werner Enterprises and Werner Leasing engaged in pre-arranged, collusive conduct with each other to fraudulently induce him to enter into the Contractor Operating Agreement. "This is not a situation, then, where the nonsignatory co-conspirator 'is a complete stranger to the plaintiffs' . . . agreements[,] . . . did not sign them, . . . is not mentioned in them,

---

[5] This observation supports the application of alternative estoppel. The Court has not been tasked with and therefore does not analyze whether it also supports the merits of Ordosgoitti's claims.

and . . . performs no function whatsoever relating to their operation." *PRM Energy Sys.*, 592 F.3d at 836 (quoting *Ross v. Am. Exp. Co.*, 547 F.3d 137, 148 (2d Cir. 2008)) (alteration in original). Rather, the circumstances in this case show that Werner Enterprises and Werner Leasing worked "hand-in-hand" to offer the "Driving Opportunity" upon which Ordosgoitti bases his claims.

Finally, the Court notes that Ordosgoitti's claims against Werner Leasing are inseparable from the Contractor Operating Agreement that contains the class-action waiver. *See MS Dealer*, 177 F.3d at 948 (observing, while applying alternative estoppel, that the plaintiff's claims were "based on the same facts and are inherently inseparable"); *cf. J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir. 1988) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement."). For example, Ordosgoitti's allegation that he and the other drivers are not independent contractors relies on the control over Ordosgoitti's work that Werner Enterprises exercised through the terms of the Contractor Operating Agreement. *See Kime v. Hobbs*, 562 N.W.2d 705, 711 (Neb. 1997) (stating that one of the factors used to differentiate between independent contractors and employees is "the extent of control which, by the agreement, the employer may exercise over the details of the work"). Moreover, Ordosgoitti claims Werner Enterprises and Werner Leasing caused him damages because he entered into the Driving Opportunity, which would not exist absent the Contractor Operating Agreement. *See Little*, 354 N.W.2d at 153 ("An essential element required to sustain an action for fraudulent misrepresentation is that a defendant's statement must induce the plaintiff to act to his injury or damage."). Indeed, Ordosgoitti seeks to certify a class of "all current and former Drivers who entered into a 'contractor operating agreement' or similarly styled agreement." Filing 41 at 8. The

Court finds it difficult to imagine how Ordosgoitti would have a claim against Werner Leasing if he had not entered into the Driving Opportunity by signing the Contractor Operating Agreement. Thus, Ordosgoitti's claims against Werner Leasing and the certification of his class rely on the existence of the Contractor Operating Agreement, making them inseparable from the agreement which contains the class-action waiver.

Ordosgoitti's Amended Complaint has alleged that Werner Enterprises and Werner Leasing worked in concert to induce him and other class members to enter into the Contractor Operating Agreement, which includes the class-action waiver. His claims, damages, and class-action certification rely upon the existence of the Contractor Operating Agreement. Accordingly, under alternative estoppel, Werner Leasing may enforce the class-action waiver against Ordosgoitti.[6]

## IV.   CONCLUSION

The Court concludes that the class-action waiver in the Contractor Operating Agreement is valid, and that both Werner Enterprises and Werner Leasing may enforce it. Thus, Werner Enterprises and Werner Leasing are entitled to summary judgment on Ordosgoitti's putative-class-action claims. Accordingly,

IT IS ORDERED:

1. Defendants' Motion for Partial Summary Judgment on Plaintiff's Putative Class Action Claims, Filing 65, is granted; and

2. Ordosgoitti's putative class-action claims are dismissed.

---

[6] Werner Leasing has also asserted that "under agency and related principles" it may enforce the class-action waiver against Ordosgoitti, because "a failure to do so would eviscerate the [class-action waiver]." *PRM Energy Sys.*, 592 F.3d at 834. Because the Court concludes that alternative estoppel allows Werner Leasing to enforce the class-action waiver, it need not address this argument.

Dated this 24th day of March, 2022.

BY THE COURT:

Brian C. Buescher
United States District Judge